UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTOPHER HICKS,

    Plaintiff,

v.

D. VINCENT FARIS, et al.,

    Defendants.

Case No. 1:20-cv-680

McFarland, J.
Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**

The above-captioned case has been referred to the undersigned magistrate judge for initial consideration and disposition of all pretrial motions other than those filed under Rule 56, Fed. R. Civ. P. (Doc. 3). Currently pending before the Court are two non-dispositive motions filed by Plaintiff: (1) a motion to re-open discovery; and (2) a motion to extend time to file motions for summary judgment.[1] For the reasons stated, the first motion is denied, and the second motion is granted in part.

**I.    Factual and Procedural Background**

Plaintiff, a self-described political watchdog and member of the Central and Executive Committee of the Clermont County Republican Party, filed this lawsuit to challenge the constitutionality of a subsection of Ohio's telecommunications harassment statute, Ohio R.C. § 2917.21(A)(5). The provision in question criminalizes telecommunications harassment, defined to include someone who: "[k]nowingly makes

---

[1] By Report and Recommendation filed this same day, the undersigned has addressed a separate motion filed under Rule 11, Fed. R. Civ. P.

1

the telecommunication to the recipient of the telecommunication, to another person at the premises to which the telecommunication is made, or to those premises, and the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any persons at those premises." *Id*. A violation of the statute constitutes a misdemeanor of the first degree.

Seeking both declaratory and injunctive relief, Plaintiff maintains that the statute is facially unconstitutional because it "criminalizes a substantial amount of constitutionally-protected expression." (Doc. 1 at ¶ 1). Specifically, Plaintiff asserts that the issue presented in this lawsuit "is the right of a private citizen to have email communication with an elected official <u>at his or her publicly provided government email address</u>, without credible fear of prosecution, when such emails contain constitutionally-protected speech." (*Id.*) (emphasis added). Plaintiff points out that the statute "does not differentiate between situations involving public officials with public email provided by the government," and therefore could create criminal liability for sending an email (including core political speech) to a public official's government email address. (Doc. 1 at ¶¶22-23). Plaintiff also has alleged that the statute is unconstitutional as applied to him, based upon an incident in which he sent emails to an elected government official who "seeks to apply the statute subjectively, selectively, ambiguously, and arbitrarily by establishing self-created content[-]based restrictions as to what email communication content is permitted to be transmitted to her publicly provided government email address." (*Id.* at ¶24). Plaintiff has identified D. Vincent Faris, the Clermont County Prosecuting Attorney, and Dave Yost, the Ohio Attorney General, as the named Defendants; both are named only in their official capacities.

Although Clermont County Treasurer Jeannie Zurmehly is not a defendant, Plaintiff's emails to that public official at her government email address are at the heart of this lawsuit. (*See id.* at ¶ 2, alleging that "telecommunication to public officials" is "[p]articularly at issue"; *id*. at ¶ 3, alleging that Defendants and non-party Zurmehly have "substantially chilled the constitutionally-protected expression" of Plaintiff; *see also id*. at ¶¶4, 24, 25, 29-42, 48, 53 (discussing Plaintiff's communications with Zurmehly). Apart from her elected position for which she uses the government email address at issue in this lawsuit, Zurmehly serves in a private role, as the Treasurer of the Clermont County Republican Party (hereinafter "Party"). Zurmehly maintains a separate private email address for matters concerning her Party role. Plaintiff serves on the Central and Executive Committees of the same Party entity. (Doc. 29 at 4, PageID 118).

The Complaint alleges that Plaintiff sent Zurmehly an email at her government email address[2] seeking information about legal services allegedly provided to Zurmehly in connection with her Party role. (*Id.* at ¶ 32). Through her government email, Zurmehly responded: 'This is not a county matter. Please do not use this email for any requests other than County Treasurer business.'" (*Id*.) After Hicks sent Zurmehly a second email seeking financial information relating to a Party political mailing, Zurmehly responded: "Please remove my County email address from these emails that do not concern official county business!" (*Id*. at ¶ 33). Plaintiff does not deny that the emails related to Party business but alleges that the emails also "related to public integrity and political matters deeply intertwined with Treasurer Zurmehly's elected office." (*Id.* at ¶ 34). Hicks sent at

---

[2]Plaintiff simultaneously sent the same emails to Zurmehly's private email (Hicks Dep., Doc. 40, PageID 461-463). He also sent letters to Zurmehly's work and the GOP headquarters, and personally left a copy of the same letter at her home. (Zurmehly Dep., Doc. 35-1, PageID 350-351).

3

least three more emails to Zurmehly's government email address that related to Clermont County Party matters. (*Id*. at ¶ 35). In response, Zurmehly contacted the Clermont County Sheriff's Office seeking to file an offense report against Hicks for Telecommunications Harassment. (*Id*. at ¶ 37). Based upon the apparent conflict of interest in prosecuting a complaint from a County official, Clermont County Prosecutor Faris forwarded her complaints to the Ohio Attorney General's Office. (*Id*. at ¶ 39).

In response, on August 18, 2020, Ohio Attorney General Bureau of Criminal Investigation Special Agent Ryan Scheiderer interviewed Hicks at his residence. (*Id*. at ¶ 40). Plaintiff filed suit less than two weeks later. After suit was filed, on September 14, 2020, a special prosecutor from the Ohio Attorney General's office sent Hicks a letter "Re: Clermont County Incident Report 2001403," stating that the purpose of the letter was to review the charge made by Zurmehly: "that you have repeatedly used her government email for private business in spite of her requests that you not do so." (Doc. 26-2). The letter states that based upon Ohio AG's review, "you have contacted Ms. Zurmehly via her county email to make requests that pertain to her role as Clermont County Republican Party Treasurer… in spite of her emailing you previously to '[p]lease do not use this email for any requests other than County Treasurer business." (*Id*. at 1).

> The prosecutor's letter provides this analysis and conclusion:
>
> Once Ms. Zurmehly asked you not to communicate with her via her government email for nongovernment business, you were obliged to comply. Each subsequent email constitutes a violation of R.C. 2917.21(A)(5).
>
> The purpose of this communication is clarify these facts and the relevant law. It is also to notify you that, upon review of the file and relevant law, it is our decision to decline pursuing charges at this time. In future, please refrain from using Ms. Zurmehly's government email for non- government

business. Our decision not to pursue charges at this time may be revisited should new information come to light.

(*Id*. at 1-2).

After Plaintiff filed this federal lawsuit, the Court entered a Calendar Order that adopted the parties' proposed dates and directed discovery to be completed on July 30, 2021. The Court subsequently granted a joint motion to extend the dispositive motion deadline to November 2, 2021 in order to allow for transcripts to be filed from key depositions.[3] (Doc. 25). Both Defendants recently filed timely motions for summary judgment. (*See* Docs. 41, 42). Although Plaintiff has not yet responded to the dispositive motions, he has separately moved to reopen discovery and to further extend the dispositive motion deadline. (Docs. 26, 33).

## II. Analysis

### A. Motion to Reopen Discovery

Fed. R. Civ. P. 16(b)(4) provides that a Calendar Order "may be modified only for good cause and with the judge's consent." Each of the parties cites to a similar (though not identical) tests used by courts to examine whether a party has shown "good cause" to modify a scheduling order and reopen discovery. In *Dowling v. Cleveland Clinic Foundation*, 593 F.3d 472, 478 (6th Cir. 2010), the Sixth Circuit articulated the relevant factors as including:

> (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests.

---

[3]The deposition transcript of Jeannie Zurmehly was filed of record on October 28, 2021, while the deposition transcript of Plaintiff was filed on November 1, 2021. (*See* Docs. 35, 40).

5

*Id.* (citing *Audi AG v. D'Amato,* 469 F.3d 534, 541 (6th Cir.2006) (additional citations omitted); *compare U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, 2008 WL 2977891 at *11 (S.D. Ohio July 29, 2008) (citing *Morgan v. Gandalf, Ltd.,* 165 Fed. Appx. 425, 431 (6th Cir.2006) (articulating factors as including the evaluation of which party caused the need for additional discovery, the specificity of the additional discovery, the relevance of the additional discovery to the underlying dispute, and prejudice to the opposing party)). Regardless of how articulated, "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements," though courts may also consider prejudice to the nonmoving party. *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir.2002) (additional quotation omitted).

    Here, Plaintiff seeks to reopen discovery in order to seek additional documents and to take the depositions of two non-parties, Greg Simpson and George Pattison, concerning their recent email exchanges with Plaintiff. Unlike Zurmehly who serves both as a Party executive and as an elected public official, Simpson and Pattison hold no elected or appointed public office and are not public employees. Therefore, neither has a government assigned email address. However, according to Plaintiff, both work closely with Zurmehly in the local Party organization.[4] Plaintiff asserts that Simpson is the Chair of the Clermont County Republican Party and that Pattison is an attorney who both represents the Party on legal matters and is a member of the Central Committee.

---

[4] Members of a central committee of a local political party act as public officials only when the committee is actually undertaking its limited, governmental duties, in filling vacancies in county offices under R.C. § 305.02. *Banchy v. Republican Party of Hamilton County*, 898 F.2d 1192, 1194-95 (6th Cir. 1990*); see also Federspiel v. Ohio Republican Party State Cent. Committee*, 1996 WL 262934, at *2 (6th Cir. 1996)

The email exchanges for which Plaintiff seeks additional discovery took place after the close of discovery in this case and relate to non-public Party matters. Plaintiff initiated the exchanges when he emailed Simpson and Pattison at their private email addresses on August 19, 2021, "as a member of the Central Committee to the Clermont County Republican Party." (Doc. 26 at 5, PageID 83). The emails sought copies of Party documents referenced during a Party committee meeting. (Doc. 26-1, Hicks Aff., ¶¶ 5, 6, 9). After receiving no reply, Plaintiff emailed the two men again on August 26, 2021. (*Id.*) The next day, Pattison and Simpson sent responsive emails to Hicks that cited Ohio R.C. § 2917.21 and directed him not to "call or contact" again on "Republican issues" (Pattison)[5] or "for any reason" (Simpson).

### 1. The Proposed New Discovery is not Necessary or Relevant

In general, a party seeking to reopen discovery prior to the resolution of summary judgment motions must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). In order to support reopening a closed period of discovery, the new information sought should be more than minimally relevant to the claims or defenses presented. *See* generally, *Doe v. Ohio State Univ.*, Case No. 2:16-cv-171, 2018 WL 1373868 at *2 (S.D. Ohio Mar. 19, 2018) (acknowledging limits of discovery in the context of a challenged subpoena). Here, Plaintiff explains he seeks to reopen discovery to pursue "facts related to the Pattison and Simpson emails." (Doc. 26 at 6, PageID at 84). He argues that the referenced emails

---

[5]Plaintiff asserts that because he is a member of the Central Committee, and Simpson is the attorney for that entity, Hicks "has an attorney-client relationship" with Pattison. (Doc. 26 at 6, PageID 84; Hicks Aff. at ¶¶ 8, 10). Whether that is an accurate statement is irrelevant to any issue in this lawsuit.

7

suggest "that Hicks is the target of a concerted campaign by government officials and political operatives to use the telecommunications harassment statute to silence him." (Doc. 26-1, Hicks Aff. at ¶¶ 5, 6, 9, 10).  More specifically, Plaintiff maintains that further discovery is needed to: (1) authenticate the emails; (2) determine whether either Simpson or Pattison reported Plaintiff to law enforcement or intend to report him in the future; and (3) "assess to what degree the telecommunications harassment statute is being discussed by political operatives as a mechanism for suppressing dissent." (Doc. 26 at PageID 86).  By contrast, Defendants characterize Plaintiff's request as a "fishing expedition" into Republican Party matters that have no bearing on this case.

The undersigned finds none of the further discovery to be necessary or relevant to the claims in this case, or necessary to resolve the pending motions for summary judgment.  Plaintiff challenges the Ohio statute on the basis of communications directed to a "public official using a publicly provided government email address." (Doc. 1 at PageID 12).  His complaint alleges that he has an unfettered right to send "political" communications to a government email used by an elected official, and that Ohio R.C. §2917.21 is facially vague and overbroad because it could criminalize such communications.  Plaintiff's complaint also charges that the statute has been unconstitutionally applied, when Zurmehly and/or the Defendant prosecutors invoked the statute in a content-based manner to suppress Plaintiff's Party-related communications to Zurmehly's government email address.  Thus, Plaintiff's Complaint attacks the constitutionality of the Ohio Statute in a particular way, concerning what Plaintiff describes as core political speech made to elected officials at their government email addresses.[6]

---

[6] Defendants' motions for summary judgment reflect a similar focus on the fact that Plaintiff's challenged telecommunications were made to Zurmehly's government email.  For example, Defendant Yost argues

8

Notably, Plaintiff's Complaint does not assert that the statute is equally unconstitutional either on its face or as applied to communications about Party matters between private individuals at their private email addresses, when those individuals hold no public office.[7] *See generally, Hagedorn v. Cattani*, 715 Fed. Appx. 499, 507 (6th Cir. 2017) (affirming summary judgment on constitutional challenge to enforcement of telecommunications harassment statute, holding that an individual does not have an uninhibited right to email the mayor at his private email account on a matter of public concern after being told by the official to use only his public email account).

Plaintiff has not demonstrated either the relevance of, or need for, the additional discovery he seeks. And absent a showing of "how the discovery would affect the [court's] ruling," discovery must be denied. *Dowling*, 593 F.3d at 478; *accord U.S. Diamond & Gold*, 2008 WL 2977891 at *12 (declining to address additional factors after concluding that the additional discovery would be irrelevant to the claims presented). For example, Plaintiff argues that he needs discovery to "authenticate" the Simpson and Pattison emails, but Plaintiff himself could do that.

The undersigned also disagrees with Plaintiff's assertion that discovery is needed to determine whether Simpson or Pattison reported Plaintiff to law enforcement or intend to report him in the future. Plaintiff suggests that such information is relevant to whether he has standing – an issue squarely presented in the pending motions for summary

---

that it was appropriate to limit the content of Plaintiff's emails because Zurmehly is prohibited from using her government email to conduct non-governmental business. (*See* Doc. 41 at 19-20). Defendant Faris argues similarly, but also contends that restricting use of the government email is proper because the Clermont County email system is not a public forum.

[7] The time for amendment of the complaint has long expired. (*See* Doc. 15 at 6, PageID 58).

9

judgment.[8] He points to the special prosecutor's statement that the decision "not to pursue charges at this time may be revisited should new information come to light," and suggests that the Simpson/Pattison correspondence could be that "new information" that supports his asserted fear of prosecution. However, like most criminal laws, R.C. §2917.21(A)(5) criminalizes conduct in relation to a specific "recipient" and "premises." Just as a prosecutor may not charge an individual for burglarizing one residence on grounds that the same individual (allegedly) burglarized a different address, so too is a prosecutor constrained from charging an individual under §2917(A)(5) for communications made to one recipient/premises based upon communications made to an entirely different recipient. Additionally, the letter from the special prosecutor addresses only Plaintiff's communications to Zurmehly's government email. (*See* Doc. 26-2 at PageID 97-98).

Because the statute governs communications directed to an individual recipient, Plaintiff's correspondence with Pattison and Simpson cannot constitute "new information" that could support a prosecution for emails sent to Zurmehly's government email address. Likewise, whether or not Simpson or Pattison have reported any offending emails has no bearing on whether Plaintiff will be prosecuted for his emails to Zurmehly. Even if Pattison or Simpson did make a report, that fact would reveal nothing about whether the County or State prosecutors would choose to prosecute him.

---

[8] Defendant Yost argues that Plaintiff has not suffered an injury-in-fact and has no credible fear of prosecution. Defendant Faris presents similar arguments, but additionally argues that "the allegations set forth in the Complaint are not proscribed conduct" under the statute. (Doc. 42 at 9-10). The statute prohibits communications only if the recipient "has previously told the caller not to make a telecommunication to those premises." According to Faris, Zurmehly did not tell Plaintiff to forego all telecommunications to the premises of the Clermont County Treasurer, but instead requested that he limit use of her government email only for official County Treasurer business.

10

Last, Plaintiff's assertion that he is entitled to additional discovery to examine the motives of "political operatives" and his expressed "hopes [that] discovery from Pattison and Simpson… will strengthen his First Amendment claims" (Doc. 26 at 8) are unpersuasive. Plaintiff argues that reopened discovery might uncover facts "regarding Pattison and Simpson's coordination with one another to chill Hicks' expression, to report him to the police, or to have him arrested for engaging in political speech and activities." (Doc. 26 at 7, PageID 85). He maintains that the timing of their emails make it "likely that Hicks is the target of a concerted campaign by government officials and political operatives to use the telecommunications harassment status to silence him." (*Id.* at 7-8, PageID 85-86, citing Hicks Aff., ¶¶ 5, 6, 9, 10). He contends that to prove a threat of future prosecution, he may "explore to what degree their communication was encouraged, ratified, or authorized by Treasurer Zurmehly and this lawsuit." (Doc. 30 at 3).

Plaintiff's arguments dance around, but fail to connect with, the claims presented in his Complaint. If private "political operatives" seek to use the Ohio statute "as a mechanism for suppressing dissent", (Doc. 26 at PageID 86), that fact might be relevant to some other claim in some other lawsuit.[9] *See, e.g.*, *Bickerstaff v. Lucarelli*, 830 F.3d 388, 394 (6th Cir. 2016) (asserting claims of malicious prosecution, abuse of process, First Amendment retaliation, supervisory liability, municipal liability, civil conspiracy, and violations of state law based upon allegedly wrongful prosecution of telecommunications harassment). But it is not relevant in this Declaratory Judgment action to determine

---

[9]Even if Plaintiff could prove that Zurmehly had encouraged Simpson and Pattison to invoke the statute to suppress dissenting emails from Plaintiff, Zurmehly is not a defendant. A private individual is free to make a report to law-enforcement, but only law-enforcement officials can investigate telecommunications-harassment allegations, and only prosecutors can bring charges. *Plunderbund Media, L.L.C. v. DeWine*, 753 Fed. Appx. 362, 371 (6th Cir. 2018). This case is about the Defendant prosecutors' interpretation of the referenced Ohio statute, not any other individual's interpretation.

11

whether the Ohio statute facially violates the First Amendment or is unconstitutional as applied to the emails sent to Zurmehly at her government email address. Therefore, the requested discovery does not justify the need to reopen discovery.

The parties argue strenuously about other factors in favor of or against the reopening of discovery, focusing on factors that relate to Plaintiff's asserted diligence. However, all discovery must first be "relevant to [a] claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action…, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b), Fed. R. Civ. P. Because the undersigned concludes that the additional discovery sought by Plaintiff is not relevant to the claims presented and would not aid the Court in resolving the pending motions for summary judgment, Plaintiff's motion to reopen discovery must be denied.

### 2. Other Factors, on Balance, Do Not Favor Reopening Discovery

To the extent any reviewing court would disagree with the foregoing analysis, the undersigned briefly examines other factors relating to the Plaintiff's diligence in conducting prior discovery and potential prejudice to the Defendants. On balance, the undersigned concludes that those additional factors also weigh against reopening discovery at this time. First, although Plaintiff characterizes the prior discovery period of discovery as "relatively short," (Doc. 26 at 8), the parties agreed to the proposed period in their Rule 26(f) report. In addition, the narrow scope of constitutional issues presented should not require extensive discovery.

In Plaintiff's favor, he exhibited an appropriate level of diligence and did not delay in seeking out the new discovery that is the subject of the motion to reopen,[10] because the email exchanges between Plaintiff and Pattison and Simpson did not occur until after the close of discovery. Plaintiff filed the motion to reopen discovery soon after those exchanges occurred. Defendant Yost faults Plaintiff's own post-discovery emails as inviting the emails that are the subject of the request to reopen. But Plaintiff did not "cause" Simpson and Pattison to respond as they did and their invocation of the telecommunications statute is not attributable to Plaintiff. In short, Plaintiff has been reasonably diligent in his pursuit of the new discovery and is not at fault for failing to pursue the same discovery at any earlier time.

The next factor to examine is the impact on any ruling. Plaintiff argues that reopening discovery for a short period will not have any negative impact. As discussed above, the undersigned has concluded that the requested discovery would have no impact on the claims in this case because it is irrelevant. However, both Defendants recently moved for summary judgment. Reopening discovery would delay ruling on those pending motions, weighing against the motion to reopen.

Finally, any delay is inherently prejudicial to the Defendants. Defendant Yost argues that if the motion to reopen is granted, Plaintiff could continue delaying resolution of this lawsuit by sending unwanted emails to other individuals. If those individuals objected, then Plaintiff ostensibly could seek even more discovery in a never-ending

---

[10]Despite admitting that the "dilatory" factor is "largely inapplicable," Defendant Yost suggests that "Plaintiff was dilatory with respect to the only deposition he took in this case" on August 3, 2021. (Doc. 27). The undersigned rejects Defendant's characterization of Plaintiff's conduct in this respect. For further discussion, see the Report and Recommendation filed herewith.

cycle. However, the undersigned finds this argument to be highly speculative at best.[11] Still, while the undersigned rejects Defendant Yost's never-ending litigation theory, both Defendants would be at least modestly prejudiced from the delayed resolution of their pending motions for summary judgment. Therefore, this factor still weighs against granting Plaintiff's motion.

### B. Motion to Extend Time to File Motions for Summary Judgment

Plaintiff seeks a 60-day extension of time of the dispositive motion deadline, until January 3, 2022, "to allow time for the Court to rule on the pending discovery motion prior to the filing of his Motion for Summary Judgment." (Doc. 33 at 2, PageID 151). In their opposition to the motion, Defendants point out that Plaintiff failed to consult with defense counsel as required under S.D. Ohio Local Rule 7.3(a) prior to filing the motion. Plaintiff's counsel acknowledges and apologizes for her error in failing to consult with opposing counsel prior to filing the motion to extend time.

Because this Order denies the motion to reopen discovery, there is no need for a lengthy extension of the November 2, 2021 dispositive motion deadline – a deadline with which both Defendants complied. Nevertheless, in the interests of justice, the undersigned will grant Plaintiff a very short extension of time in which to file his own counter-motion for summary judgment.

### III. Conclusion and Order

For the reasons discussed, **IT IS ORDERED**:

1. Plaintiff's motion to reopen discovery (Doc. 26) is **DENIED**;

---

[11]Even if Plaintiff were to engage in the hypothetical conduct and even if the hypothetical recipients of future emails were to respond by invoking the statute and requesting that Plaintiff stop emailing them at their particular addresses, there is no indication that this Court would grant any future-filed motion to reopen discovery on those facts.

14

2. Plaintiff's motion to extend time to file a dispositive motion (Doc. 33) is **GRANTED IN PART**, with Plaintiff to file any such motion on or before **January 14, 2022**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge