UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHRISTOPHER HICKS, : Case No. 1:20-cv-00680

     Plaintiff, : Judge Matthew W. McFarland
                                  Magistrate Judge Stephanie K. Bowman

v. :

D. VINCENT FARIS, *et al.*, :

     Defendants. :

---

**PLAINTIFF CHRISTOPHER HICKS' *OMNIBUS***
**RESPONSE TO DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT**

---

## I.    Introduction

The Attorney General and the Clermont County Prosecutor believe it is a crime to email a public official about a matter of public concern.  The Attorney General and the Clermont County Prosecutor also believe elected officials can selectively limit the public's ability to contact them through official government channels based on the content of the communication.  But the First Amendment – and courts across the country – clearly say otherwise.  *See, e.g., United States v. Sryniawski*, 48 F.4th 583 (8th Cir. 2022) (invalidating conviction for cyberstalking based on emails sent to political candidate about private behaviors that reflected on candidate's fitness to serve); *Commonwealth v. Bigelow*, 475 Mass. 544, 59 N.E.3d 1105 (Mass. 2016) (holding that letters sent to public official criticizing his fitness to serve were protected by the First Amendment and could not be criminalized as harassment).  Under prevailing First Amendment principles, emails sent to a public official at his governmental email address that do not contain true threats, obscenity, or other unprotected expression cannot be criminalized.  *See, e.g., id.* at 587-8; *Hagedorn v. Cattani*,

715 Fed. Appx. 499, 507 (6th Cir. 2017). For this reason, and the reasons that follow, the Motions for Summary Judgment filed by both the Attorney General and the Clermont County Prosecutor should be denied.

## II. Neither The Attorney General Nor The Clermont County Prosecutor Is Entitled To Judgment As A Matter Of Law.

### A. Plaintiff Christopher Hicks has Standing to Challenge Ohio Rev. Code § 2917.21(A)(5).

To have standing to challenge the constitutionality of a law, a person must demonstrate that he has suffered an injury in fact, that the law in question is the cause of the injury, and that a favorable decision from the court will redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1 (1992). In a pre-enforcement challenge, a reasonable fear of prosecution satisfies the injury in fact requirement. *See, e.g., McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016). Such a fear exists when: 1) a speaker "alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute," and (2) "there exists a credible threat of prosecution." *Id*. at 867 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014)). The Supreme Court has recognized that "[a]n allegation of future injury may" satisfy the injury-in-fact requirement if the alleged "threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *SBA List*, 134 S.Ct. at 2341 (quoting *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147, 1150 n.5 (2013)). Specifically, "a plaintiff satisfies the injury-in-fact requirement" in the pre-enforcement context "where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'" *Id*. at 2342 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). A threat of future enforcement is credible when the same conduct has drawn threats

of enforcement in the past. *Kiser v. Reitz*, 765 F.3d 601, 609 (6ᵗʰ Cir. 2014). Such a threat is

considered particularly substantial when the enforcing agency has not disavowed enforcement if

the plaintiffs make similar statements in the future. *Id*. (citing *SBA List*, 134 S.Ct. at 2345); *see*

*also Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010).

Hicks easily satisfies this test. On September 14, 2020, the Attorney General's Office

notified Hicks in writing that he had committed a crime by emailing Zurmehly at her county-issued

email after she had asked him to stop. R. 35-1 Zurmehly Depo. Ex. 10, PAGEID 387-8. It opined

that "[e]ach subsequent email constitutes a violation of R.C. 2917.21(A)(5)," thus implying that

Hicks had broken the law numerous times. *Id*. It demanded that Hicks "refrain from using Ms.

Zurmehly's government email for non-government business" without defining the parameters of

what subjects fell within each category. *Id*. And it put Hicks on notice that it would revisit its

decision to file charges if "should new information come to light" without identifying the type of

information it would consider relevant to that decision.[1] *Id*. Hicks interpreted the letter as a

warning that future emails to Zurmehly would subject him to prosecution. R. 40 Hicks Depo.,

PAGEID 494-99.

---

[1] Since receiving the Attorney General's warning letter, Hicks has been the subject of at least two
other attempts to weaponize the telecommunications harassment statute against his protected
political expression. One exchange involved a warning by the attorney representing the Clermont
County Republican Party Central Committee, of which Hicks is a member. *See* Doc. 49-1 Hicks
Decl., ¶¶ 13-21. That attorney, George Pattison, sent Hicks an email instructing Hicks not to
contact him anymore, despite Hicks' need to communicate with Pattison as his legal representative
as a member of the Central Committee. *See id*. at ¶ 21. The other exchange involved the Chair of
the Clermont County Republican Party, Greg Simpson, who also emailed Hicks a no-contact
directive despite Hicks' service as a fellow Central Committee member. *See id*. at ¶ 23. Both
gentlemen expressly referenced Ohio's telecommunications harassment statutes in their emails,
thus indicating that they would report Hicks for a crime if Hicks in fact emailed them in the future
for any purpose, including those protected by the First Amendment. *See id*. at ¶¶ 21, 23. It is
unclear if this is the kind of "new information" the Attorney General was contemplating when he
reserved the right to press charges against Hicks for emailing Zurmehly. *See* R. 35-1 Zurmehly
Depo. Ex. 10, PAGEID 387-8.

As the Attorney General readily points out, Hicks continues to email Treasurer Zurmehly at her government email address despite being asked to stop.  Doc. 41 AG MSJ Brief, PAGEID 562.  Given that the Attorney General has indicated that emailing Zurmehly is a crime, and given that he has threatened to prosecute based if new information comes to light, there exists a credible threat that Hicks will be prosecuted for his ongoing emails to Zurmehly.

The Attorney General attempts to minimize Hicks' standing by arguing that the September 14, 2020 letter disavows prosecution.  But it does no such thing.  While informing Hicks that he has broken the law and instructing him not to do so again in the future, the letter merely advises that Hicks will not be prosecuted "at this time."  Doc. 35-1 Zurmehly Depo. Ex. 10, PAGEID 387-8.  It warns that he may be prosecuted in the future if circumstances change and implies that each time he emails Zurmehly moving forward, he is committing a new criminal offense.  *Id*.  This is the precise type of enforcement warning letter that the Sixth Circuit held in *McKay* gives rise to a credible fear of prosecution.  *See McKay*, 823 F.3d at 869.  In fact, it is hard to envision a set of circumstances that would create a more well-founded threat that charges will be filed than the one that exists here.

Ironically, the Clermont County Prosecutor attempts to minimize Hicks' standing by arguing that he does not fear prosecution.  He suggests this is the case because Hicks continues to email Zurmehly and has made statements indicating that he has not changed his approach since receiving the Attorney General's letter.  Doc. 42 Clermont County MSJ Brief, PAGEID 661.  But this point actually ***strengthens*** Hicks' standing, because it demonstrates his "intention to engage in a course of conduct arguably affected with a constitutional interest," one of the bedrock attributes of the injury-in-fact requirement.  *See SBA List*, 134 S.Ct. at 2341.  Hicks need not be afraid of prosecution – although there is plenty of evidence in the record to suggest that he does

indeed live in fear[2]; rather, the focus is on whether there is a credible threat of prosecution given that Hicks continues to email Zurmehly.  The Attorney General's September 14, 2020 letter makes clear that there is.  The requirements for standing are therefore satisfied.

### B. The Clermont County Prosecutor is a Proper Party.

As explained in Hicks' reply to the County Prosecutor's response to Hicks' summary judgment motion, the County Prosecutor is a proper defendant in this case.  County prosecutors retain a role in enforcing Ohio's telecommunications harassment statute against citizens who contact elected officials at the township or village level.  *See* Ohio Rev. Code §§ 504.15(A), 705.11 (indicating that townships and villages are typically represented by their own law directors rather than the county prosecutor).  Moreover, county prosecutors may not always recognize or act to remove a perceived conflict of interests when a county official is the complaining witness in a telecommunications harassment case.  As such, absent an injunction against the County Prosecutor, he would be free to weaponize Ohio Rev. Code § 2917.21(A)(5) in the precise manner that places Hicks' speech (and others) at risk.

### C. Ohio Rev. Code § 2917.21(A)(5) Is Fatally Overbroad.

Hicks has written extensively on the fatal overbreadth that infects Ohio's telecommunications harassment statute and adopts that briefing here without repeating it.[3]  He

---

[2] Since being investigated by the Ohio Bureau of Criminal Investigation for telecommunications harassment, Hicks has his wife record any time the front doorbell rings.  Doc. 40 Hicks Depo., PAGEID 489-90.  He has lawyers on standby.  *Id*. at PAGEID 495-96.  He lives in constant fear of being arrested.  *Id*. at PAGEID 489-92.

[3] For the Court's reference, Hicks has already addressed the overbreadth question in his own Motion for Summary Judgment and the replies he submitted to the response briefs filed by both Defendants.  *See* Doc. 57 Hicks' MSJ Brief, PAGEID 807-8; Doc. 63 Hicks' Reply to AG MSJ Resp., PAGE 904-6; Doc. 62 Hicks' Reply to County Prosecutor's MSJ Resp., PAGEID 884-6.

does, however, emphasize several points regarding the use of the telecommunications harassment statute to criminalize political expression protected by the First Amendment.

### 1. Citizens have a First Amendment right to email elected officials, and that contact cannot be criminalized.

The Sixth Circuit has expressly recognized the right of citizens to speak out on matters of public concern, including criticism of the conduct of elected officials, by emailing their government email addresses. *See Hagedorn v. Cattani*, 715 Fed.Appx. 499, 507 (6th Cir. 2017). The Eighth Circuit recently extended this principle by invalidating a cyberstalking conviction that was based on critical and at times personally embarrassing emails directed to a political candidate. *See Sryniawski*, 48 F.4th 583. Because the emails did not constitute a true threat, obscenity, defamation, or any other unprotected form of speech, they could not be criminalized consistent with the First Amendment, even if they were communicated with the intent to harass or annoy the candidate. *Id*. at 587-9. *Sryniawski* is consistent with a litany of cases, cited in Hicks' earlier briefs, that protect the First Amendment right to petition the government through critical communication ***directed at government officials through official, direct channels of government communication***. *See, e.g., United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999); *United States Postal Serv. v. Hustler Mag., Inc.*, 630 F.Supp. 867 (D.D.C. 1986).

What these cases make clear is that a citizen has the First Amendment right to contact government officials directly and to communicate criticism directly. Consistent with *Hagedorn* and *Sryniawski*, any attempt to criminalize that communication must explain how the speech in question is unprotected by the First Amendment, i.e., true threats, obscenity, child pornography, defamation. *See Sryniawski*, 48 F.3d at 587-9.

The County Prosecutor, in particular, implicitly embraces this limitation by arguing that Hicks' email incites Zurmehly to violate the law. More specifically, the County Prosecutor

contends that, by receiving Hicks' email, Zurmehly is violating the law that prohibits use of county emails to conduct the business of a political party. *See* Ohio Rev. Code § 9.03. But he fails to explain how Hicks' emails fit within the *Brandenburg* test for incitement, which requires that: 1) the speech explicitly or implicitly encouraged the use of violence or lawless action, 2) the speaker intends that his speech will result in the use of violence or lawless action, and 3) the imminent use of violence or lawless action is the likely result of his speech. *Bible Believers v. Wayne County, Mich.*, 805 F.3d 228, 246 (6th Cir. 2015). Given that the right to criticize elected officials and their conduct is expressly protected by the First Amendment, it is hard to see how Hicks' emails to Zurmehly, which both criticized her performance and requested information that would shed light on what Hicks believed was mismanagement in her role as Party Treasurer, would have incited her to imminent lawless action. *See, e.g., Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). In fact, it is hard to believe, without more, that merely receiving emails from Hicks would cause Zurmehly, an elected official with no known record of criminal misconduct, to break the law.

To the contrary, Hicks' emails to Zurmehly are protected expression falling squarely within the right to petition the government for redress of grievances. *Hustler*, 630 F.Supp. at 871. Any attempt to criminalize Hicks' communication violates that right and is unconstitutional.

**2. The statute applies to speech, not conduct.**

The Attorney General and the County Prosecutor argue that the telecommunications harassment statute targets conduct, not expression. But the facts of this case dictate otherwise. Here, the Attorney General notified Hicks that he violated the telecommunications harassment statute by emailing the elected County Treasurer about ostensible non-county business after being asked to stop. Doc. 35-1 Zurmehly Depo. Ex. 10, PAGEID 387-8. The non-county business referenced in the request concerned the Treasurer's conduct as an officer of a local political party

and, thus, her fitness to hold public office, among other matters of public concern.  *See, e.g.,* Doc. 35-1 Zurmehly Depo. Ex. 2, PAGEID 339.   While the Attorney General elected not to bring formal criminal charges against Hicks at that time, he did opine that Hicks' speech violated the law, because he continued to contact the Treasurer about matters involving the Treasurer's out-of-office conduct, rather than matters directly involving her responsibilities as a county elected official.  Doc. 35-1 Zurmehly Depo. Ex. 10, PAGEID 387-8.

In order to ascertain whether Hicks' emails were lawful and in compliance with the county business/non-county business distinction, a person would be required to review the content of the emails.  This is the very definition of a content-based restriction on speech, because consideration of the content of the expression determines its legality.  *See Reed v. Town of Gilbert*, 576 U.S. 155, 163-4 (2015).  Thus, the statute in question here goes far beyond targeting mere actions; it targets expression based on its content.

### 3.  Public forum analysis is irrelevant.

The County Prosecutor suggests that limiting citizen communication to an elected official's email address to county-related business is a reasonable regulation of speech in a non-public forum.  This is wrong from the outset, because the courts' cases addressing the right of the public to petition their elected representatives do not cabin that right into specific forums.  *See, e.g., Bigelow*, 475 Mass. 544; *Popa*, 87 F.3d 672; *Hustler*, 630 F.Supp. 867.  To the contrary, courts recognize an unfettered right to contact government officials through their official government emails, as contrasted to the ability of government agents to set limits on the public's ability to access their private email accounts and private methods of communication.  *See Hagedorn*, 715 Fed. Appx. at 507.

Practical reasons exist for rejecting the County Prosecutor's public forum analysis as well. For one thing, email addresses do not lend themselves to rules of engagement in the way that public meetings or public spaces do, and indeed none were provided here. *See, e.g., Ison v. Madison Local School Dist.*, 3 F.4th 887 (6th Cir. 2021) (describing rules for public participation at school board meetings adopted by public school board and made available to the public). When a person accesses a government official's email address, that address typically does not come with a list of protocols for expected communication, nor were any posted on the Treasurer's website to guide the type of emails that should be sent to the Treasurer's email address. Doc. 57-1 Hicks Decl. Exhibit, PAGEID 816-18. Moreover, unlike social media platforms, which contain pages where rules can be posted, and public meetings, which can be regulated with advanced notice to the public, email addresses are not a form of communication to which regulations easily attach. Instead, email addresses much more closely resemble the United States Postal Service, in that a written communication is delivered from an author to a recipient. For this reason, public forum analysis is simply inapplicable, given that the right in question focuses on petitioning the government directly, not regulating a citizen's right to speak to the listening public in more generalized manner.

Moreover, even if the Court treats Zurmehly's address as a public forum for speech purposes, the restriction the Attorney General and the County Prosecutor have created on emailing Zurmehly about non-county business imposes an unreasonable viewpoint-based regulation on expression. For one thing, the supposed restriction is unclear in its coverage, so much so that not even Zurmehly herself could consistently express whether a particular email is about county or non-county topics. *Compare* Doc. 35 Zurmehly Depo. PAGEID 219, 249 (testifying that what constitutes county business is on the County Treasurer website); 262-3 (testifying that criticism

about County Treasurer's support of Donald Trump constitutes county business).  Courts have invalidated undefined speech restrictions of this variety as being unreasonable.  *See, e.g., Amer. Freedom Def. Initiative v. Sub. Mobility Auth. for Regional Transp.*, 978 F.3d 481, 493-7 (6th Cir. 2020) (holding that lack of objective, defined standards to guide enforcement of limitation on "political" speech on buses was unreasonable).  For another thing, limiting communication to elected officials to their statutory duties, as Zuhmerly intends to do, excludes critical viewpoints like Hicks'.  *See Ison*, 3 F.4th 887.

Thus, while public forum analysis is inapposite here, the telecommunications harassment statute fails to satisfy its requirements.

### D.  Ohio Rev. Code § 2917.21(A)(5) Is Unconstitutionally Vague.

Both Defendants argue that Ohio's telecommunications harassment statute is not vague because Ohio courts have enforced its terms.  But state case law is not binding on this Court, or even persuasive, as it does not address the issues raised in this case. As Hicks has mentioned previously, these cases are not as significant as Defendants make them out to be.  *See* Doc. 63 Hicks' Reply to AG MSJ Resp., PAGEID 902.  They address different arguments than the ones raised here, contain little analysis, and are so generic in outcome as to be inconsequential to the serious First Amendment issues raised in this case.  *See id*.  While the Court is bound by an authoritative construction of a state law by state courts, none of the cases Defendants cite contain such an interpretation.  Even if the cases were persuasive, however, this Court can – and should – make its own independent judgment about the constitutionality of Ohio's telecommunications harassment statute.

**E.   Ohio Rev. Code § 2917.21(A)(5) Is Unconstitutional as Applied to Hicks.**

Notably, the County Prosecutor does not seek summary judgment as to Hicks' as-applied claim, but the Attorney General argues against Hicks' as-applied claim on the basis that he has no constitutional right to contact Zurmehly at her government email address.  The Attorney General contends this is the case because Zurmehly would commit a crime by responding to Hicks' non-county-related emails through this communication method.  But the focus of the inquiry is not on Zurmehly's communication; it is on Hicks'.  Just as members of Congress who wished to disregard copies of *Hustler Magazine* mailed to them at their offices could simply use the wastebasket in the *Hustler* case, Zurmehly can simply use the delete button rather than responding to those emails that she deems inappropriate for her county email address.  *See Hustler*, 630 F.Supp. at 874.

The Attorney General also minces Hicks' words to argue that the statute has not been applied to him, because he has continued to email Zurmehly.  But this ignores the evidence.  It is clear from the record that Hicks has not emailed Zurmehly to criticize her based on her extra-office conduct since receiving the warning letter, and, thus, in this regard, his speech has been limited by enforcement of the statute to him.  *See* Doc. 40 Hicks Depo., PAGEID 455.  In addition, Hicks also suffered injuries related to the application of the telecommunications harassment statute to his expression. He was interviewed for hours in his home by law enforcement.  *Id*. at PAGEID 487, 496-7.  He faced – and still faces – the potential of prosecution.  Doc. 35-1 Zurmehly Depo. Ex. 10, PAGEID 387.  He fears criminal charges.  Doc. 40 Hicks Depo., PAGEID 489-92.  These injuries have very real consequences for Hicks and are direct evidence that the statute has in fact been applied to him.

"When contesting the constitutionality of a criminal statute, 'it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute

that he claims deters the exercise of his constitutional rights.'" *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Hicks requires the intervention of the Court to ensure he never faces the arrest the Attorney General threatens and to preserve his protected First Amendment rights.

## III. Conclusion

The Attorney General and County Prosecutor are simply wrong in their assertion that critical communication by a citizen to a public official can be prosecuted as a crime. Unless the speech contains a true threat or is otherwise unprotected, citizens have a protected right to contact their elected officials about matters pertaining to a wide range of subjects – from the functioning of government to the public official's fitness for office, even where the latter may touch on matters dealing with the official's private conduct. *See, e.g., Sryniawski*, 48 F.4th 583. As set forth in this memorandum, and Hicks' previous summary judgment filings, Defendants' Motions for Summary Judgment should be denied.

Respectfully submitted,

s/ Jennifer M. Kinsley
JENNIFER M. KINSLEY (Ohio Bar No. 0071629)
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
Phone: (513) 708-2595
Email: kinsleylawoffice@gmail.com

s/ Nicholas R. Owens
NICHOLAS R. OWENS (Ohio Bar No. 0089574)
The Law Office of Nicholas R. Owens
88 Station Drive
Georgetown, Ohio 45121
Phone: (513) 706-2634
Email: nick@nickowenslaw.com

Counsel for Plaintiff Christopher Hicks

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the forgoing document was provided via the Court's CM/ECF filing system on the 31st day of October, 2022.


  s/ Jennifer M. Kinsley
JENNIFER M. KINSLEY (Ohio Bar No. 0071629)