**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CHRISTOPHER HICKS,

       Plaintiff,

    v.

D. VINCENT FARIS, et al.,

       Defendants.

Case No. 1:20-cv-680

McFarland, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

The above-captioned case was recently referred to the undersigned magistrate judge for consideration of three motions for summary judgment. In this Report and Recommendation ("R&R"), the undersigned recommends that the Court issue a declaratory judgment and preliminary injunction in favor of Plaintiff Hicks and against the Defendant Ohio Attorney General to preclude enforcement of a statute that, as applied, would criminalize the sending of emails to Plaintiff's elected representative.

**I.    Background**

Plaintiff Christopher R. Hicks is a self-described political watchdog and member of the Central and Executive Committee of the Clermont County Republican Party.[1] This case concerns email communications sent to non-party Jeannie Zurmehly, who holds public office as the Clermont County Treasurer. Hicks sent emails to Zurmehly's

---

[1]Plaintiff has litigated other cases raising constitutional violations. *See*, *e.g.*, *Hicks v. Crowley*, No. 2:22-cv-2204-SDM-CMV (summary judgment motions pending); *Hicks v. Clermont County Bd of County Commissioners*, No. 1:17-cv-677-TSB (dismissed pursuant to settlement following mediation before the undersigned).

Government email address raising concerns about Zurmehly's role as treasurer of the Clermont County Republican Party. Zurmehly objected to the use of her Government email for matters that she deemed unrelated to her public office and asked him to stop. Hicks persisted.

In April 2020, Zurmehly filed an offense report with the Clermont County Sheriff's Office, seeking to press criminal charges for Telecommunications Harassment under Ohio law. Based on a clear conflict of interest, the Clermont County Prosecutor's Office referred the matter to a special prosecutor with the Ohio Attorney General's Office. After the special prosecutor interviewed him at length, Hicks filed suit against both the Clermont County Prosecutor and the Ohio Attorney General ("OAG") in their official capacities, seeking declaratory and injunctive relief to prevent enforcement of Ohio Rev. Code. §2917.21(A)(5). Both Defendants and Hicks have moved for summary judgment.[2] The undersigned finds that § 2917.21(A)(5) is unconstitutional as applied to Hicks.

## II.    Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348

---

[2]Though only recently referred, Defendants' motions for summary judgment were filed on November 2, 2021, with an *Amicus* Memorandum filed by the Clermont County Treasurer on January 4, 2022. Plaintiff's cross-motion was filed on January 13, 2022, with briefing completed on November 14, 2022.

(1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986.

The parties agree that this case can be fully resolved on summary judgment. The undersigned therefore finds no need to set forth the applicable standard of review in greater detail, other than noting that the undersigned has considered each party's motion separately by "view[ing] the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks and citations omitted). *see also Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F.Supp.2d 706, 732 (S.D. Ohio 2006) (explaining that cross-motions for summary judgment do not alter the applicable standard of review, since each party's motion is reviewed separately by the Court).

### III.    Findings of Fact

In 2020, Jeannie Zurmehly served two roles: (1) as the duly elected Treasurer for Clermont County, Ohio, a public office; and (2) as the treasurer for the Clermont County Republican Party, a partisan (non-public) position. Clermont County assigned Zurmehly an email address for her public position ("Government Email"). She maintained a separate email address for her partisan position ("Party Email"), and a third email for personal matters.

In November 2019, Hicks used Zurmehly's Government email to request a copy of an engagement letter for a lawsuit involving the Clermont County Republican Party.[3] He

---

[3]Plaintiff testified he sent duplicate emails to Zurmehly's private email (Hicks Dep., Doc. 40, PageID 461-463). He also sent letters to Zurmehly's work and the GOP headquarters, and personally left a copy of the same letter at her home. (Zurmehly Dep., Doc. 35-1, PageID 350-351).

testified that he believed the information to be relevant to his concern that Zurmehly had not reported all "gifts" under state ethics rules. Based on her view that the request pertained exclusively to her Party role and was "not a county matter," Zurmehly asked Hicks not to send further emails to her Government email for matters that did not concern Clermont County Treasurer business. (Doc. 35-1, PageID 340). Hicks sent at least two more emails to Zurmehly's Government email that related, at least in part, to Republican Party matters. (Doc. 72 at PageID 950 (admitting "in part" that a March 26 email pertained to a Republican Party meeting); Doc. 73, PageID 955 (admitting that April 6 email pertained to Party matter)). But Hicks insists that the emails *also* relate to Zurmehly's fitness to serve in public office as Clermont County Treasurer.

Unhappy with Plaintiff's continued use of her Government email, Zurmehly filed an offense report with the Clermont County Sheriff's Office on April 22, 2020. In her report, Zurmehly provided copies of her requests to Hicks that he stop using her Government email. She expressed her opinion that Hicks' emails were sent "with the intent to harass, threaten and intimidate her," and her desire "to pursue charges of Telecommunications Harassment on Mr. Hicks." (Doc. 35-1, PageID 371). The Sheriff's office contacted D. Vincent Faris, the Clermont County Prosecutor at the time,[4] who determined that his office had a conflict of interest since Treasurer Zurmehly was a county employee.

Based on the conflict, Faris immediately sought the assistance of a special prosecutor through the Ohio Attorney General's Office. The OAG appointed a special prosecutor on May 11, 2020. The special prosecutor tasked the Ohio Attorney General Bureau of Criminal Investigation with the investigation. On August 18, 2020, a BCI Special

---

[4]Mr. Faris's term as the Clermont County Prosecuting Attorney concluded January 3, 2021. Mark J. Tekulve is the current elected Clermont County Prosecutor.

Agent interviewed Hicks at his residence about Zurmehly's complaint that he had violated § 2917.21(A)(5) of Ohio's Telecommunications Harassment statute.

Since 1972, Ohio has prohibited telephone harassment. Ohio Rev. Code § 2917.21(A)(4)(1972). In 1981, subsection (A)(5) was added to prohibit "knowingly" making "a telephone call" to a recipient who "has previously told the caller not to call the premises to which the telephone call is made." *Id*. In 1999, the title of the statute was changed to "Telecommunications [H]arassment," and the word "telecommunication" was substituted for "telephone call."[5] An initial violation of § 2917.21(A)(5) constitutes a criminal misdemeanor in the first degree, but a subsequent violation is a fifth-degree felony punishable by a fine up to $2,500.00 and imprisonment of between six and twelve months. *See* § 2917.21(C)(2).

During the investigation, the BCI Special Agent allegedly told Hicks that the emails represented "a pretty clear and simple case." Less than two weeks after being interviewed, on August 31, 2020, Plaintiff filed suit to challenge the threatened enforcement of § 2917.21(A)(5).[6]

Two weeks after Hicks filed suit, on September 14, 2020, the OAG sent Hicks a letter with the subject line: "Re: Clermont County Incident Report 2001403." The letter summarized the OAG's review of Zurmehly's report. In relevant part, the letter reads:

> Ms. Zurmehly alleges that you have repeatedly used her government email for private business in spite of her requests that you not do so.
>
> Based on my review of the case file, you have contacted Ms. Zurmehly via her county email to make requests that pertain to her role as Clermont

---

[5]Despite the substitution of the word "telecommunication," § 2917.21(A)(5) continues to use the word "caller." *See id*., requiring the "recipient or another person at those premises" to have notified "the caller not to make a telecommunication."
[6]Plaintiff makes no claim that Zurmehly herself violated Plaintiff's free speech rights. *Compare Lindke v. Freed*, 601 U.S. 187 (2024).

County Republican Party Treasurer. This in spite of her emailing you previously to "[p]lease do not use this email for any requests other than County Treasurer business".

. . .

Once Ms. Zurmehly asked you not to communicate with her via her government email for nongovernment business, you were obliged to comply. Each subsequent email constitutes a violation of R.C. 2917.21(A)(5).

The purpose of this communication is clarify these facts and the relevant law. It is also to notify you that, upon review of the file and relevant law, it is our decision to decline pursuing charges at this time. In future, please refrain from using Ms. Zurmehly's government email for non-government business. Our decision not to pursue charges at this time may be revisited should new information come to light.

(Doc. 35-1, PageID 387-388).

To date, Hicks has never been charged for a violation of § 2917.21(A)(5) by either the Clermont County Prosecutor or by the Ohio Attorney General. After filing suit, Plaintiff continued to email Zurmehly at her Government email. At no time has he altered his speech or conduct based on the events alleged in his Complaint. (Doc. 72, PageID 952).

## IV.   Analysis

Plaintiff broadly challenges the Defendants' ability to apply §2917.21(A)(5) to communications directed to a "public official using a publicly provided government email address." (Doc. 1 at PageID 12). Hicks maintains that §2917.21(A)(5) is facially vague and overbroad because it could criminalize his and others' First Amendment rights under the U.S. Constitution to send core political communications or to petition their representatives. In addition, he asserts that the statute is unconstitutional as applied because Zurmehly and/or Defendants invoked it in a content-based manner to suppress Plaintiff's communications to Zurmehly's Government email. In a second claim, Hicks

alleges that the statute is unconstitutional under the Ohio Constitution. Before addressing the merits of Hicks' claims, the undersigned confirms the existence of this Court's jurisdiction.

### A. The Question of Justiciability

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 144 S.Ct. 1540, 1554, 602 U.S. 367, 378 (2024). Thus, to claim federal jurisdiction, a plaintiff must have standing, defined as a "'personal stake' in the dispute." *Id*., (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S.Ct. 2190 (2021)). To establish standing, Hicks must show that he has "suffered an 'injury in fact,'" that was caused by "the conduct complained of," and which "a favorable decision" is likely to redress. *Kareem v. Cuyahoga Cnty. Board of Elections*, 95 F.4th 1019, 1022 (6th Cir. 2024) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992) (additional citations omitted)).

"An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341, 573 U.S. 149, 158 (2014) (quoting *Lujan*, 504 U.S. at 560, internal quotation marks omitted). Both Defendants argue that Hicks cannot show standing in part because he has never been charged with a violation of § 2917.21(A)(5). In addition, the Clermont County Prosecutor argues that – whatever injury Hicks claims to have suffered – it is not the cause.

### 1.  Hicks Lacks Standing to Sue the Clermont County Prosecutor

The Clermont County Prosecutor is entitled to judgment as a matter of law based on Hicks' failure to demonstrate standing against that Defendant. In each case, a plaintiff "'must demonstrate standing for each claim'" asserted "against each defendant." *Murthy v. Missouri*, 144 S.Ct. 1972, 1988 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431, 141 S.Ct. 2190 (2021)).

Any individual can register a complaint with law enforcement authorities as Zurmehly did in this case, but only a prosecuting attorney has the authority to investigate and to initiate criminal charges under § 2917.21(A)(5). *See Plunderbund Media, L.L.C v. DeWine*, 753 Fed. Appx. 362, 371 (6th Cir. 2018). When contacted by the Clermont County Sheriff's office about Zurmehly's offense report, the County Prosecutor immediately recognized its inherent conflict of interest, recused, and sought a referral to a special prosecutor from the Ohio Attorney General's office. It was the OAG, not the Clermont County Prosecutor, that investigated Zurmehly's allegations and ultimately sent Hicks a letter concerning her complaint. So any injury that occurred based on Plaintiff's asserted threat of prosecution is not traceable to or caused by the County Prosecutor. Not only has the Clermont County Prosecutor never initiated enforcement of § 2917.21(A)(5) for communications with a Clermont County official (Hicks' alleged injury), it would recuse on the same grounds for any future offending emails to a Clermont County official.

Hicks protests, arguing that some future Clermont County Prosecutor *might* not be as careful to screen out conflicts. (*See* Doc. 70, PageID 927). In addition, Hicks maintains that the Clermont County Prosecutor *could* be involved in investigating a complaint by a

township or village official within the county's jurisdiction, should Hicks send emails to that official's government email after receiving notice not to do so. But because Hicks cannot show that the County Prosecutor caused his past injury, it is much harder for him to make a showing that he faces a continued risk of future restriction traceable to that same defendant. See *Murthy v. Missouri*, 144 S.Ct. at 1987. On the record presented, Plaintiff's hypothetical "what ifs" are too speculative to prove standing against the County Prosecutor in *this* case.

### 2. Hicks Has Standing to Sue the Ohio Attorney General

#### a. Whether the OAG is a Proper Defendant

Hicks has less of a causation problem with the OAG. Still, the undersigned briefly considers Hicks' emphasis on Zurmehly's conduct, as if *she* were the individual with authority to file criminal charges against him. (*See*, *e.g.*, Doc. 1, ¶3 (allegation that both Zurmehly and the Defendants "chilled" his expression through "their [combined] selective and threatened" prosecution); *id.*, ¶ 4 (alleging a "*credible threat of prosecution by Treasurer Zurmehly* or other similarly situated Clermont County public officials," emphasis added), Doc. 40, PageID 488 (testimony that "[W]e're here …[b]ecause Jeannie Zurmehly decided to try to have me arrested for having dared to send an email to her government account."). Despite Plaintiff's emphasis on Zurmehly's conduct, the OAG (not Zurmehly) possesses the decision-making authority on whether to prosecute Hicks for violating §2917.21(A)(5).  Therefore, the OAG is a properly named Defendant.

#### b. Plaintiff's Subjective Chill and Showing of Injury

Having confirmed that the OAG is a proper Defendant, the undersigned considers whether Plaintiff can demonstrate that the OAG caused Hicks an injury-in-fact. Hicks

alleges injury premised on the possibility that he will be charged with a violation of § 2917.21(A)(5). "At the summary judgment stage, a plaintiff must allege 'specific facts' that create a genuine dispute of material fact regarding each requirement of standing." *Kareem*, 95 F.4th at 1022.

To prove (or defeat) standing, both Defendants and Plaintiff lean heavily on language in the OAG's September 14, 2020 letter announcing the OAG's "decision to decline pursuing charges at this time." For standing purposes, that is a mistake. To be fair, the letter is highly relevant to the determination of whether Hicks has an *ongoing* justiciable claim. But because the letter is dated *after* Plaintiff initiated suit, it cannot be used to prove standing at the time Plaintiff filed his complaint. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, 128 S.Ct. 2759 (2008) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."). So the undersigned sets aside the letter to focus on standing as it existed at the moment the complaint was filed.

Hicks alleges standing to challenge § 2917.21(A)(5) based on a subjective "chill." But subjective chill caused by the mere existence of an allegedly unconstitutional statute "without more" does not establish standing. See *Laird v. Tatum*, 408 U.S. 1, 10, 92 S. Ct. 2318, 2324 (1972) "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id*., at 13-14, 92 S.Ct. at 2325-26. At the same time, actual charges or a conviction are not essential for standing. "[W]hen fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.'" *Babbitt v. United*

*Farm Workers Nat. Union*, 99 S.Ct. 2301, 2310-11, 442 U.S. 289, 302 (1979) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).

To prove standing in a pre-enforcement case, Hicks may show a threat of specific future harm. To do so, Hicks must show (1) he intends to engage in "expression that the Free Speech Clause arguably protects," (2) that his expression is "arguably proscribed" by Ohio's statute; and (3) that he faces a "credible threat of enforcement" for his intended expression. *See Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022) (per curiam) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. at 159). Here, Hicks satisfies the first two elements. His emails "arguably" contained protected speech, and the BCI investigator's comments suggested that the emails were "arguably proscribed" by the Ohio statute.

But Hicks also must show a "credible threat of enforcement" at the moment his complaint was filed. Under *McKay v. Federspiel*, 823 F.3d 862 (6th Cir 2016), that "credible threat" is shown when a "subjective chill" is coupled with "some combination of the following factors: (1) a history of past enforcement…; (2) enforcement warning letters[;]…(3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action" and/or (4) "a defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Id.*, 823 F.3d at 869. In more recent cases, the Sixth Circuit has stressed that not each *McKay* factor needs to be established, and that the list is not exhaustive. *Kareem*, 95 F.4th at 1023 (citing *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021)).

Before addressing the four listed *McKay* factors, the undersigned considers Defendants' view that Plaintiff loses based on evidence that disproves his allegations that

his speech has "already [been] substantially chilled," (Doc. 1 ¶¶3, 29; *see also id.*, ¶18, alleging statute is being used by "hypersensitive public officials and prosecutors to chill speech, and criminalize and prosecute individuals who speak out against and petition the government…."). Defendants posit that *McKay* also requires *objective* evidence of "subjective chill."

But Hicks testified that he has *never* altered his speech in any way based on the events alleged in his Complaint. (*See also* Doc. 72, PageID 952). The only thing he "did differently was seek legal counsel" to file suit based on his belief that Zurmehly and others were attempting (without success) to "chill my speech." (Doc. 40, PageID 488). Plaintiff freely admits he has not engaged in self-censorship, and has never limited emails sent to Zurmehly at her Government email. Despite that lack of objective impact on the content or mode of his expression, Hicks insists that he "feels" a chill based on knowledge that he could be criminally charged. (Doc 1, ¶ 49). As for evidence, Hicks testified that "since the BCI agent showed up" to interview him, his wife will "immediately get a video camera" when the doorbell rings and that "we live in fear that we're going to get arrested." (Doc 40, PageID 489-490). And though he expressly denies having "refrain[ed] from speech" in any way,[7] he insists that he "liv[es] in fear" of a future arrest. (Doc. 40, PageID 491).

Are Defendants correct in asserting that "*subjective* chill" requires evidence of some *objective* impact on behavior to prove a pre-enforcement claim? If so, must that impact be on speech, such as self-censorship? Or does a subjective fear of arrest (and

---

[7]Hicks draws a distinction between being "afraid" of being arrested and having "fear" of exercising his First Amendment rights.  He cited to the "noble tradition of the First Amendment" as a basis for why he did not "fear" continuing to speak out. (Doc. 40, PageID 498-499).

getting a camera ready when the doorbell rings) suffice? On this issue, the undersigned finds in favor of Hicks.

The U.S. Constitution protects *all* Americans, including the meek, the brave and the foolish. A plaintiff who seeks to challenge an unconstitutional law should not be required to prove that a legitimate fear of imminent prosecution has driven him to self-censorship. While a plaintiff who continues to freely exercise his First Amendment rights may find it difficult to demonstrate a "specific present objective harm," he still may demonstrate standing through a showing of a "threat of specific future harm." In other words, the plaintiff who bravely or foolishly exercises his First Amendment rights notwithstanding the likelihood of arrest and prosecution should be equally protected so long as he has adequate proof of a "credible threat" of imminent prosecution. *See also, generally, Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cr. 2007) (to prove a First Amendment retaliation claim, a plaintiff need only show that the defendant's actions "would chill a person of ordinary fitness.") (internal quotation marks and additional citation omitted). So Hicks' testimony that he subjectively "feels" a chill is sufficient to establish standing if he combines that "subjective chill" with proof of a "credible threat" under the four *McKay* factors.

Hicks cannot establish the first *McKay* factor, which considers the prior enforcement of the same statute against plaintiff or others for similar conduct. Over the four decades that §2917.21(A)(5) has been in existence, it has been enforced many times. But to date, it has never been enforced either against Plaintiff or anyone else for sending an email (or making a phone call or other form of telecommunication) to an

elected official at his or her public Government address.[8] *See*, *generally, Plunderbund Media,* 753 Fed. Appx.at 369 (rejecting pre-enforcement challenge to a different provision, § 2917.21(B), where plaintiffs could not show any prior enforcement or decisions dealing with political speech).

The second *McKay* factor concerns the existence of "warning letters." At the time the complaint was filed, the investigation had been ongoing for several months. In addition, the BCI investigator told Hicks plainly that the case appeared to be "pretty clear and simple." The status of the ongoing investigation coupled with the investigator's remark, is sufficient to show that Hicks was constructively warned about the likelihood of prosecution.

Under the third *McKay* factor, Hicks argues the challenged statute "makes enforcement easier or more likely" because Zurmehly or any political enemy can "initiate" an enforcement action by telling him not to email them again, and then following up with a complaint to law enforcement if he does so. (*See* Doc. 40, PageID 487, testimony that OAG's decision to investigate was driven by Zurmehly's complaint). However, in *Plunderbund*, the Sixth Circuit rejected a similar claim that a political enemy *might* "initiate" a false prosecution by filing a complaint with police. And the fact that any citizen may file a complaint with law enforcement is not necessarily the same as a provision that

---

[8]Plaintiff points to evidence that, during the course of this lawsuit, two additional Clermont County Republican Party members emailed Hicks requesting that he not email them and citing to Ohio Rev. Code §2917.21(A)(5). But the referenced individuals "hold no elected or appointed public office and are not public employees," and "neither has a government assigned email address." (Doc. 52, PageID 771). The potential enforcement of § 2917.21(A)(5) against Hicks for emails addressed to private individuals at their respective *private* email addresses does not bear on the First Amendment claims presented. (*Id.*, PageID 770-72). Another example cited by Hicks in a reply memorandum, (Doc. 63), is equally distinguishable because in that case, the individual was charged not with violating § 2917.21(A)(5), but under a separate provision that criminalizes knowingly posting a text or image on the internet "for the purpose of abuse, threatening, or harassing another person."

permits a member of the public to "initiate" an enforcement action. Only a prosecutor can bring criminal charges. *See id.,* 753 Fed. Appx. at 371.

On the other hand, the fact that a complained-of violation may result in criminal prosecution rather than merely administrative or civil action is also significant. *See Kareem*, 95 F.4th at 1025 (holding that "the threat of such [criminal] punishment significantly heightens the risk of chilled expression."). In *Plunderbund*, the plaintiffs' allegations were wholly unsupported and "simply too ... highly conjectural to present a threat of immediate injury, as the allegations rest[ ] on a string of actions the occurrence of which is merely speculative." *Id.*, 753 Fed. Appx. at 371 (internal quotation marks and additional citation omitted). Not so here. Unlike the shear conjecture in *Plunderbund*, Zurmehly's complaint led directly to the OAG's investigation and subsequent letter suggesting that the emails violated the statute. So Hicks' evidence of "ease-of-prosecution" is not as easily dismissed.

And Hicks can show the fourth *McKay* factor – a lack of disavowal of prosecution. Again, when he filed his complaint the OAG's investigation had been ongoing for more than four months with no indication that the OAG would disavow enforcement. To the contrary, the investigator's comments strongly suggested that enforcement was "certainly impending." *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (quoting *Crawford v. U.S. Dep't of the Treasury*, 868 F.3d 438, 454 (6th Cir. 2017)); *contrast Plunderbund Media, L.L.C v. DeWine*, 753 Fed. Appx. at 372 (rejecting claim where the defendants "expressly affirmed that the law in question does not reach political expression.").

So even if Hicks' showing on ease-of-enforcement is discounted, Hicks still has produced sufficient evidence to show a credible threat of imminent enforcement at the time he filed his complaint. Therefore, Hicks has established standing. *Accord Kareem*, 95 F.4th at 1027 (finding no need to determine whether individual factors would be sufficient to establish injury-in-fact where "combined…they contribute to a sufficiently credible threat of enforcement.").

### 3. Standing Versus Mootness

As stated, the parties rely heavily on their respective interpretations of the special prosecutor's September 14, 2020 letter to either support standing or to undermine it. But neither the Sixth Circuit nor the Supreme Court have repudiated the notion that standing is to be determined at the moment in time that the complaint was filed.[9] Therefore, the undersigned considers that evidence under the doctrine of mootness.

Mootness refers to the concept that "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Graveline v. Benson*, 992 F.3d 524, 533 (6th Cir. 2021) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944 (1969)). Even when no party has raised the issue, a court, "may raise the question of mootness *sua sponte*" in order to assure itself of jurisdiction. *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citing *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993)).

Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he

---

[9]In *Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548, 557 (6th Cir. 2021), the Sixth Circuit cited several Supreme Court cases that imply that "in certain cases a plaintiff may have to maintain standing throughout the lawsuit." *Id*. Without resolving whether continued standing is required, the court resolved the case on mootness, which "poses another Article III jurisdictional bar to plaintiffs' claim." *Id*., citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66–67, 117 S.Ct. 1055 (1997).

might have won in it. When that happens, a federal court must dismiss the case as moot.

*Federal Bureau of Investigation v. Fikre*, 144 S.Ct. 771, 777, 601 U.S. 234, 240 (2024).

When Hicks filed his complaint, Zurmehly had reported the unwanted emails to the Sheriff's office, but no prosecutor had yet come to a conclusion that Hicks violated the statute. Two weeks after Hicks filed suit, the OAG prosecutor to whom the matter had been referred wrote to state he was "declin[ing] to pursu[e] charges at this time." To this day, Hicks has never been prosecuted. Given the 2-year statute of limitations, Defendants argue that the passage of time coupled with the OAG's letter means that Hicks no longer can claim a "reasonable" fear of prosecution for the 2020 emails that he sent to Zurmehly's Government email.

But Plaintiff testified that he continues to send similar emails and that his fear of imminent prosecution remains. (Doc. 40, PageID 496, 497-498). He points to language in the OAG's letter opining that Hicks' continued use of Zurmehly's "government email for nongovernment business" after her request that he not do so "constitutes a violation of R.C. 2917.21(A)(5)." The OAG ends the letter both with a request to "please refrain from using Ms. Zurmehly's government email for non-government business," and an admonition that the "decision not to pursue charges at this time may be revisited should new information come to light."

The Supreme Court's recent decision in *Federal Bureau of Investigation v. Fikre* confirms Plaintiff's position. There, the plaintiff filed suit against the Federal Bureau of investigation ("FBI") alleging multiple violations of his procedural due process rights based on his placement on a "No Fly List." The plaintiff further alleged that the FBI had placed him on the No Fly List for constitutionally impermissible reasons. *Id.* at 238-239. The

plaintiff had suffered significant injury that supported standing at the time he filed suit. But the FBI argued that the suit had been rendered moot when: (1) the FBI subsequently removed the plaintiff from the No Fly List; and (2) filed a declaration that the plaintiff "will not be placed on the No Fly List in the future based on the currently available information." *Id.*, 144 S.Ct. at 776, 601 U.S. at 240. The Supreme Court held that the declaration failed to satisfy the government's "formidable burden" to show that its alleged unconstitutional conduct cannot "reasonably be expected to recur." *Fikre*, 144 S.Ct. at 777, 601 U.S. at 241 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189-190, 120 S.Ct. 693 (2000)).

The same reasoning applies here. Once Hicks proved standing at the outset of litigation, the burden shifted to Defendants to show that the OAG's post-suit letter renders Hicks' claims moot. But the OAG has never expressly disavowed the possibility of a future prosecution based on the same conduct. By stating that Hicks' prior emails violated the statute and couching the OAG's decision not to prosecute in the present tense "at this time," the OAG unmistakably leaves open the possibility of future prosecution. Adding to that inference is the directive to "please refrain from using Ms. Zurmehly's government email for non-government business" and pointed warning that the "decision not to pursue charges … may be revisited should new information come to light." As in *Fikre*, the OAG has failed to carry its "formidable burden" to show that a future prosecution will not occur if Plaintiff engages in the same or similar conduct in the future (sending unwanted emails concerning certain topics to Zurmehly's Government email). *See id.*, 601 U.S. at 243; *accord Kareem*, 95 F.4th at 1026 (reasoning that "a directive by an official can establish a credible threat of enforcement because it 'initiates the formal [enforcement] process,

which itself is chilling,'" quoting *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019)).

### B.  Plaintiff's Constitutional Claims

Plaintiff's complaint sets forth two broad claims: (1) that § 2917.21(A)(5) is unconstitutional under the First Amendment of the United States Constitution; and (2) that the statutory provision is unconstitutional under the analogous provisions of the Ohio Constitution. Defendants are entitled to judgment as a matter of law on the latter claim, because there is no private right of action under the Ohio Constitution. *See Hagedorn v. Cattani*, 715 Fed. Appx. 499, 509 (6th Cir. Nov. 17, 2017); *Williams v. Nice*, 58 F. Supp.3d 833, 839-40 (N.D. Ohio 2014).

Plaintiff's claim that the statute is unconstitutional under the U.S. Constitution requires further analysis. Within that single claim, Hicks mounts multiple attacks, including but not limited to claims: (a) that the statute is facially overbroad; (b) that the statute is facially vague; and (c) that the application of the statute to Hicks is unconstitutional "as applied." "The 'usual judicial practice' is to address an as-applied challenge before a facial challenge because it generally will be more 'efficien[t],' because this sequencing decreases the odds that facial attacks will be addressed 'unnecessarily' and because this approach avoids encouraging 'gratuitous wholesale attacks upon state and federal laws.'" *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 327-28 (6th Cir. 2009) (en banc) (quoting *Bd. of Trs. of the State Univ. of N.Y. v. Fox,* 492 U.S. 469, 484-85, 109 S.Ct. 3028 (1989)). Here, Hicks has proven that § 2917.21(A)(5) is unconstitutional "as applied." However, the undersigned does not recommend finding the statute to be facially unconstitutional.

### 1. Ohio's Statute is Unconstitutional as Applied

Hicks has demonstrated that § 2917.21(A)(5) is unconstitutional as applied. Specifically, the Defendant OAG may not criminalize - based on the recipient's objection to the content – Hicks' sending of a small number of emails to a public official's Government email.[10] Two factors are key to this conclusion: (1) the OAG seeks to apply § 2917.21(A)(5) against Hicks based solely on the *content* of his emails; and (2) the OAG seeks to expand the use of a "harassment" law to shut down email communication from a constituent to his elected official <u>at her government email address</u> that is not threatening, abusive, intimidating or otherwise "harassing" in any traditional sense of the word.

First, the content problem. Notably, in opposition to Plaintiff's *facial* challenge, the OAG repeatedly argues that the statute "is not content based." (Doc. 41, PageID 572). *See State v. Gibbs*, 134 Ohio App.3d 247, 730 N.E.2d 1027, 1030-31 (Ohio Ct. App. 12th Dist. 1999) (holding that "the content of the [communication] is immaterial to whether [it] constitutes harassment or not."). In *Hagedorn v. Cattani*, 715 Fed. Appx. 499, the Sixth Circuit concurred with that straightforward interpretation,[11] noting that the Ohio courts had previously "construed the statute 'in a manner that permits the statute to operate lawfully

---

[10]Prior to technological advances, unwanted telephone calls or large quantities of spam emails had greater potential to disrupt business operations. But here, Defendants cite to just four emails.

[11]It is not clear whether the Clermont County Prosecutor shares the OAG's as-applied interpretation. Before this Court, the County Prosecutor suggests that Hicks' conduct in emailing Zurmehly at her Government email did not violate § 2917.21(A)(5), because the statute categorically proscribes <u>all</u> telecommunications to a recipient who "previously has told the caller not to make a telecommunication." The County Prosecutor states that Zurmehly did not fulfill the content-neutral condition precedent because she never told Hicks to cease <u>all</u> communications to her Government email, but only requested that Hicks not to "use this email for any requests other than County Treasurer business." (*See* Doc. 42 at 9, arguing that "the allegations set forth in the Complaint are not proscribed conduct under the telecommunications statute."). Curiously (and without explanation of the inconsistency with his motion for summary judgment and the September 14, 2020 letter) the OAG at one point agrees with the Clermont Prosecutor's conclusion that Hicks could not be prosecuted for § 2917.21(A)(5) because Zurmehly "never told Plaintiff not to contact the Clermont County Treasurer's Office…." (Doc. 58, PageID 836).

and constitutionally.'" *Id*. at 507 (citing *Gibbs*, 730 N.E.2d at 1030 (additional citations omitted)).

But the OAG's September 14, 2020 letter puts an unmistakable content-based gloss on the application of § 2917.21(A)(5) to the emails at issue, declaring them as violative of § 2917.21(A)(6) by reference to whether they concern "nongovernment business," as defined by Zurmehly and/or the OAG.

> Once Ms. Zurmehly asked you not to communicate with her via her government email for nongovernment business, you were obliged to comply. Each subsequent email constitutes a violation of R.C. 2917.21(A)(5).

(Doc. 35-1, PageID 387). The letter not only states that each past email concerning "nongovernment business" constitutes a criminal offense, but that emails containing similar content could violate the statute in the future. (*Id*.)

So, "as applied," the OAG's threatened enforcement of § 2917.21(A)(5) against Hicks is content-based. And therein lies the problem.

> "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. American Civil Liberties Union,* 535 U.S. 564, 573…(2002) (internal quotation marks omitted). As a result, the Constitution "demands that content-based restrictions on speech be presumed invalid ... and that the Government bear the burden of showing their constitutionality."

*United States v. Alvarez*, 132 S.Ct. 2537, 2543-44, 567 U.S. 709, 715-17 (2012) (quoting *Ashcroft v. American Civil Liberties Union,* 542 U.S. 656, 660, 124 S.Ct. 2783 (2004)); *accord Sammons v. McCarthy*, 606 F.Supp.3d 165, 226 (D. Md. 2022) (ban directed at plaintiff from emailing County officials based on plaintiff's complaints about official was content-based ban subject to strict scrutiny)..

The fact that the OAG is threatening to criminally charge Hicks for sending an email to an official <u>Government email</u> address, as opposed to a private email address, provides the second basis for the Court's concern with the statute as applied. Defendants are quick to point out that several Ohio courts have considered and rejected other constitutional challenges. See, e.g., *State v. Rettig*, 1992 WL 19326 (Ohio Ct. App. 3rd Dist., Feb. 3, 1992) (upholding the conviction of a man who repeatedly telephoned his ex-girlfriend against her wishes); *State v. Gibbs*, 134 Ohio App.3d 247, 730 N.E.2d 1027 (upholding conviction of a woman who repeatedly called her ex-husband's business number); *State v. Kronenberg*, 2011-Ohio-1069, ¶ 16, 2011 WL 827580, at *2 (Ohio App. 8 Dist. 2011).

But the cases do not support applying the statute to a Government email that, by all accounts, is regularly used Zurmehly and constituents alike to communicate about matters of public concern and/or to petition the County Treasurer. *See State v. Haas*, 2021-Ohio-2864, ¶ 10, 2021 WL 3716724, at *2 (Ohio App. 6 Dist., Aug. 20, 2021) (declining to reach constitutional challenge to sentence that included a "no contact" provision with City staff and Maumee Court staff, where misdemeanor sentence was agreed upon as part of plea negotiations that amended the charge from telecommunication harassment to criminal mischief). And none of the Ohio cases support the application of §2918.21(A)(5) based on a content restriction. In fact, the Ohio Supreme Court has never addressed the constitutionality of §2917.21(A)(5) at all. And the lower courts' rejection of constitutional challenges have been grounded on two core principles: (1) the statutory language is *not* based on content; and (2) the statute is consistent with an individual's right to be "let alone." Both principles were established in

*Rowan v. U.S. Post Office Dept.*, 397 U.S. 728, 90 S. Ct. 1484 (1970). Neither supports the constitutional application of §2917.21(A)(5) to the facts presented here.

In *Rowan*, the Supreme Court rejected a constitutional challenge to a civil statute that required the Postmaster General, upon receipt of a notice that an "addressee" had received "pandering" advertisements,[12] to prohibit all further commercial mail from the same sender. In addition to concluding that a ban on <u>all</u> further commercial mail from the sender was permissible because it did not require the Postmaster to evaluate content, *Rowan* explicitly balanced the right to communicate that commercial speech against the right of individual "householders" "to be let alone" in the privacy of their homes.[13]

> Weighing the highly important right to communicate, but without trying to determine where it fits into constitutional imperatives, against the very basic right to be free from sights, sounds, and tangible matter we do not want, it seems to us that a mailer's right to communicate must stop at the mailbox of an unreceptive addressee.
>
> The Court has traditionally respected the right of a householder to bar, by order or notice, solicitors, hawkers, and peddlers from his property. … In this case the mailer's right to communicate is circumscribed only by an affirmative act of the addressee giving notice that he wishes no further mailings from that mailer.
>
> To hold less would tend to license a form of trespass and would make hardly more sense than to say that a radio or television viewer may not twist the dial to cut off an offensive or boring communication and thus bar its entering his home. … The ancient concept that 'a man's home is his castle' into which 'not even the king may enter' has lost none of its vitality, and none of the recognized exceptions includes any right to communicate offensively with another.

*Rowan*, 90 S.Ct. at 1490, 397 U.S. at 736-37.

---

[12]The statute was aimed at permitting a household member to reject mail from senders who had previously mailed advertisements that he or she believed to be "erotically arousing or sexually provocative." *Rowan*, 90 S.Ct. at 1487, 397 U.S. at 730.

[13]Like other Ohio cases, the *Gibbs* court expressly relied on *Rowan* and emphasized that the statute was content-neutral. If the defendant brought up the distinction between *Rowan*'s dual emphasis on the unwanted intrusion into a home versus a phone call to a public business; the court failed to mention it.

The Sixth Circuit's unpublished decision in *Hagedorn v. Cattani* offers a somewhat analogous fact pattern. There, a constituent had repeatedly emailed the mayor at his personal email address after being instructed to send all emails to his government email. Charged under §2917.21(A)(5), the constituent was acquitted after testifying that she accidentally selected the wrong address from her phone. After acquittal, she promptly filed a civil rights suit for First Amendment retaliation. The district court granted summary judgment to the defendants, and the Sixth Circuit affirmed, holding that the individual privacy interest in one's home established in *Rowan* applied to a non-content based restriction on email sent to a government official's *personal* email account.

But *Hagedorn* draws a sharp distinction between a home (where *Rowan*'s privacy interests are paramount) and an official's government email address:

> We refuse to adopt Hagedorn's position that the First Amendment allows her an uninhibited right to communicate with Cattani through channels he does not use in his official capacity as mayor simply because he is a public official. In doing so, we are guided by the Supreme Court's decision in *Rowan v. U.S. Post Office Dept*… Although we have been hesitant to extend *Rowan* outside its "peculiar application to the home"… we find the logic of the Court's decision applicable here. A personal email account is the functional equivalent of a home mailbox. The state's interest in protecting an individual's privacy carries equal weight in both situations. For us to hold otherwise- and thus to endorse Hagedorn's conduct -"would tend to license a form of trespass." *Rowan*, 397 U.S. at 737, 90 S.Ct. 1484. In the same way that Cattani could stop Hagedorn from entering onto his property to share her views about his performance, he should also be able to keep her from sending unwanted messages to a personal email address.

> Additionally, we are considerably less concerned about infringing on Hagedorn's First Amendment rights because she retains multiple channels through which she can communicate with Cattani—including his official, Village of Timberlake email address. We recognize her right to speak out on a matter of public concern, but she does not have an uninhibited right to do so to an official's private email account after he asks her to stop. Officials like Cattani must be prepared to accept criticism and to be responsive to the demands of their constituents, but they are not expected to open up every aspect of their private lives for public access.

> Furthermore, the implications of holding that Hagedorn could not be prosecuted for telecommunications harassment are troubling. There would be no recourse for public officials harassed at home, on a personal phone line, or at a personal email account. What Ohio has done here, by criminalizing the act of engaging in harassing communications regardless of the content, provides an effective balance of these important privacy and speech interests.

*Hagedorn*, 715 Fed. Appx. at 507-08. Despite being distinguishable on its facts, *Hagedorn* implicitly supports Hicks' position that extending §2917.21(A)(5) to a governmental email address used for official communications may be unconstitutional.

As additional persuasive authority, Plaintiff directs this Court to cases outside this circuit. For example, in *United States Postal Serv. v. Hustler Mag., Inc.*, 630 F. Supp. 867 (D.D.C. 1986), the district court found unconstitutional "as applied" the same statute previously upheld in *Rowan.* There, the Postmaster sought to enforce a ban on delivery of a sexually explicit magazine to Congressional offices, where the sender asserted not only his right to communicate but his right to petition the government. The court rejected a proposed content-based restriction as unsupported by *Rowan*, and reasoned that the sanctity of the home did not translate to an official's office. "[O]nce [an elected official] leaves home for the office, this privacy, this right to be let alone, significantly weakens and in many situations is non-existent." *Hustler Magazine, Inc.*, 630 F. Supp. at 871. Like the court in *Hustler*, the Sixth Circuit has resisted any expansion of *Rowan*'s privacy interests beyond an individual's home. *See Anderson v. Spear*, 356 F.3d 651, 661 (6th Cir. 2004) (noting that it is "dubious at best that [the] so-called right to be left alone, which under *Rowan* has peculiar application to the home, should be extended" to polling places); *see also Mirabella v. Villard*, 853 F.3d 641, 654–55 (3rd Cir. 2017) (holding that

ban on plaintiffs' ability to email township officials infringed on plaintiffs' First Amendment right to petition their government).

More recently in *United States v. Sryniawski*, 48 F.4th 583 (8th Cir. 2022), the Eighth Circuit overturned a defendant's conviction for cyberstalking based on emails sent to a political candidate's official campaign email address that were alleged to have been sent with the intent to "harass [or] intimidate." *Id.*, 48 F.4th at 585. To survive the defendant's "as applied" constitutional challenge, the government was required to identify "sufficient evidence for a jury to find that Sryniawski acted with intent to 'harass' or 'intimidate' in a sense that is not protected under the First Amendment." *Id.* at 587. The government was unable to make that showing, in large part because the offensive emails were sent to the candidate's official email. "[T]he cyberstalking statute cannot be applied constitutionally to a defendant who directs speech on a matter of public concern to a political candidate with intent merely to trouble or annoy the candidate." *Id.*; *accord State v. Drahota*, 788 N.W.2d 796, 805, 280 Neb. 627, 639-640 (Neb., 2010) (reversing conviction based on provocative emails sent to political candidate after candidate instructed defendant not to communicate; privacy interests endorsed in *Rowan* were limited to commercial speech aimed at private citizens, not political speech directed to a candidate for public office). In suggesting that § 2917.21(A)(5) can be broadly applied to *any* "telecommunications" directed to Zurmehly's Government email, the OAG cannot stand on the privacy interests at the heart of *Rowan*. And no other authority suggests that an elected official enjoys historic privacy interests in his or her official "address."

Based on relevant and persuasive case law, the OAG's threatened application of § 2917.21(A)(5) to Hicks' emails is unconstitutional. The OAG's content-based gloss on

the threatened prosecution, coupled with the application of § 2917.21(A)(5) to emails directed to an official's Government email, violates Hicks' First Amendment rights. In so concluding, the undersigned hastens to add that different facts could easily alter the result. Other provisions of Ohio's Telecommunications Harassment law criminalize expression based on content more traditionally understood to be "harassment."[14] Whether those provisions could be constitutionally applied to ban a constituent's abusive, harassing, or threatening email to a government official is not before this Court. *Cf. Plunderbund Media,* 753 Fed. Appx.at 369 (noting the lack of any prior application of § 2917.21(B)(2) to political speech). Nor does this Court consider whether Clermont County could impose time, place and manner restrictions on the public's use of its email system, or how any such regulations or policies might be enforced. The sole issue before the Court is whether a facially content-neutral criminal statute can be constitutionally applied in a content-specific fashion to a constituent who emails his elected representative at her Government email address about topics that she declares to be outside the scope of her elected duties. To that narrow question, the answer is no.

Defendants offer several arguments in defense of content-based enforcement against Hicks. None persuade. First, the OAG argues that Hicks' speech constitutes ordinary private speech, rather than the type of core political speech that is entitled to the highest First Amendment protections. *See Lichtenstein v. Hargett*, 83 F.4th 575, 583 (6th

---

[14]Unlike §2918.21(A)(5), most sections of the Telecommunications Harassment statute contain terms more closely associated with traditional notions of "harassment." *See*, *e.g.*, §2917.21(A)(1) (prohibiting telecommunications made with the "purpose to harass, intimidate, or abuse"); §2917.21(A)(6) (barring "telecommunication that is threatening, intimidating, menacing, coercive, or obscene with the intent to abuse, threaten, or harass the recipient"); § 2917.21(A)(3) (barring telecommunication that constitutes "Aggravated menacing"); § 2917(B)(2) (prohibiting internet posts "for the purpose of abusing, threatening, or harassing another person."). Other provisions concern telecommunications relating to sexual activity, or expressing an intention "to cause damage to or destroy public or private property." See §§ 2917.21(A)(2), (A)(4).

Cir. 2023) ("[T]he First Amendment's protections reach their 'zenith' for political speech.") (quoting *Meyer v. Grant*, 486 U.S. 414, 425, 108 S.Ct. 1886 (1988)). But the OAG does not address the fact that private speech is still protected under the First Amendment. And Hicks disputes Defendants' characterization, pointing to language wherein he relates Zurmehly's partisan activities to her fitness for public office.[15]

Certainly "political speech" may include criticism of an elected official's private behavior. And a dual purpose in speech does not negate the higher protection to which political speech is due. See *U.S. v. Popa*, 187 F.3d 672, 678 (2d Cir. 1999) (finding federal statute unconstitutional as applied where harassment conviction was based on arguably political complaints that also contained unrelated offensive language, because the jury was not permitted to consider Popa's alleged intent "both to communicate his political message and to annoy"); *but see generally*, *Doherty v. City of Maryville*, 431 Fed. Appx. 381, 388 (6th Cir. 2011) ("'[T]he proper inquiry is *not* what might be incidentally conveyed by the speech, and that passing or fleeting references to an arguably public matter do not elevate the speech to a matter of public concern where the focus or point of the speech advances only a private interest.'" (quoting *Farhat v. Jopke*, 370 F.3d 580, 592–93 (6th Cir. 2004) (emphasis in original)). Ultimately, the undersigned finds no need to resolve the parties' dispute about whether the emails were '"private speech" or served a dual

---

[15]In the March 26 email chain, Hicks directly contests Zurmehly's characterization of his prior email:
> Your behavior in the capacity of GOP Clermont County Treasurer reflects directly on your elective office. Your integrity is "official county business." If you mislead and deceive in party financial matters, openly lie (ex: about whether the Sheriff had agreed to pay $1k for a mailing) and make false accusations it speaks to your character and integrity. So too does making a false accusation about me in an open meeting (that I was lying about the Sheriff not agreeing to pay). So too do your attempts to intimidate elected officials who dare respond to questions I ask.

(Doc. 35-1, PageID 345).

purpose. Either way, the OAG fails to explain how a content-based gloss on §2917.21(A)(5) is permissible.

Defendants offer two more arguments. First, the Clermont County Prosecutor asserts that Zurmehly's "Government email" is a type of public property (like a government building, park, or sidewalk) that this Court should analyze under the "public forum" paradigm. Applying that framework, the County Prosecutor suggests that the content-based restriction to "government business" is reasonable despite its exclusion of otherwise protected speech. Alternatively, both Defendants contend that the threatened content-based application of §2917.21(A)(5) against Hicks is justified because Hicks' speech falls into a rare category of speech that is wholly unprotected by the First Amendment.

When applying public forum analysis, courts first determine whether the public property in question is a traditional public forum, a designated public forum, or a nonpublic forum. *See Putnam Pit, Inc. v. City of Cookeville, Tenn*., 221 F.3d 834, 842 (6th Cir. 2000). The ability to restrict communication depends on the category in which the public property is placed. Limiting expression in a traditional "public forum" like a street or a public park is "sharply circumscribed," as is restricting speech in a designated public forum. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 103 S.Ct. 948, 954, 460 U.S. 37, 45-46 (1983). By contrast, a government may reasonably restrict communications in a nonpublic forum, defined as "[p]ublic property which is not by tradition or designation a forum for public communication." *Id*., 103 S.Ct. at 955, 450 U.S.at 45. For that category alone, "the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression

merely because public officials oppose the speaker's view." *Id.*, 103 S.Ct. at 955, 460 U.S. at 46. The Clermont County Prosecutor maintains that Zurmehly's Government email is a nonpublic forum that may be restricted to use for Clermont County business alone.

But the public forum analysis is a clumsy analytical tool that is inapposite to the facts presented.[16] At its heart, public forum analysis concerns communications conveyed to a group, typically other members of the *public*. This case does not concern Hicks' attempt to communicate to a larger group through a nonpublic system of "mail facilities" like in *Perry*, or to the public through a government-run website like in *Putnam Pit*. Rather than communication from one-to-many as would occur in the typical "public forum" context, this case concerns one-to-one communication from a constituent to his elected representative, like a single telephone call or letter in the mail.[17] Hicks alternately characterizes his emails as both "political speech" and as a "petition" to the Treasurer. And rather than the typical public forum case involving a direct challenge to the forum's

---

[16]Because the "public forum" paradigm does not apply, the undersigned finds no need to consider whether the OAG's enforcement of her content restriction on Hicks' emails was viewpoint-neutral if Zurmehly's email is a nonpublic forum. That said, the construed narrowness of Zurmehly's restriction to only "county treasurer business" gives the undersigned some pause. (Doc. 35, PageID 220).

[17]The undersigned finds unpersuasive a handful of mostly unpublished decisions outside the Sixth Circuit that have applied forum analysis to emails or email *systems* maintained by public universities or other governmental organizations. *See*, *e.g.*, *Bruce v. Kelly*, No. 20-4077-DDC-GEB, 2021 WL 4284534 (D.Kan., Sept. 21, 2021) (granting qualified immunity to defendant who blocked individual from sending emails to state-owned email addresses where complaint did not allege email system was open to the public); *Collins v. West*, No. 3:20-CV-6082-DWC, 2021 WL 4241317 (W.D. Wa. Aug. 24, 2021) (upholding as reasonable restriction to specified government email); *Bowen v. Goldstein*, No. 07 Civ. 10997(RMB), 2007 WL 4457242, at *5 (S.D.N.Y., Dec. 13, 2007) (upholding right of public university to restrict use of email system). *See also*, *generally*, *Fla. Family Ass'n, Inc. v. School Bd. of Hillsborough Cnty.*, 494 F.Supp.2d 1311, 1322 (M.D.Fla 2007) (noting that the issue of public versus private forum status of email servers is "dicey" but holding that even if email system created public forum, school was entitled to judgment on claim challenging its decision to block email campaign of nonprofit family organization).

civil or administrative content restrictions,[18] Hicks challenges the OAG's application of a *criminal harassment statute* to his emails.

Along with the Clermont County Prosecutor, the OAG offers one last defense of its threatened application of § 2917.21(A)(5) to criminally enforce Zurmehly's content-based restrictions. Defendants assert that the State's application of §2917.21(A)(5) against Hicks is justified to prevent Zurmehly from being <u>forced</u> to commit a crime.[19] Defendants reason that Ohio Rev. Code § 9.03(D) prohibits the use of "public funds" by any individual for the "benefit of … [a] political party … [or a] candidate." A violation is a criminal misdemeanor. *See* Ohio Rev. Code §3599.40. Because Zurmehly's Government email is government property, Zurmehly's *responses* to Hicks' emails might "benefit" the Republican party and therefore violate § 9.03(D) - assuming Zurmehly possessed the requisite *mens rea* to make her violation "knowing." Going one step further, the OAG argues that Hicks' own emails constitute "speech integral to criminal conduct" that is outside the scope of any First Amendment protection.

I disagree. In *United States v. Alvarez*, the Supreme Court reaffirmed the principle that content-based restrictions on speech are limited to a few "historic and traditional categories [of expression] long familiar to the bar." *Id.*, 132 S. Ct. at 2544, 567 U.S. at 717 (cleaned up, additional citations omitted). True, "speech integral to criminal conduct"

---

[18]Arguably, the public forum paradigm is also inappropriate because this case does not directly challenge the County's "viewpoint neutral regulations." Up until the time that Zurmehly notified Hicks that she was imposing a content restriction and sought the assistance of the Clermont County Sheriff and the OAG to enforce that restriction through § 2917.21, no formal regulation existed. Zurmehly testified she has asked other constituents to use a different email for business she deems unrelated to Clermont County duties, but has not filed a criminal complaint against anyone other than Hicks.

[19]The Clermont County Treasurer, through a separately filed Amicus Memorandum, similarly argues that Hicks' speech is not protected by the First Amendment because it invited the County Treasurer to use her public computer and email to communicate about her partisan political work on County time, which could be prosecuted as a felony offense for "theft in office" or the "unauthorized use of property." See Ohio Rev. Code §§ 2921.41(A)(2) and 2913.04(A).

is on that list. *See. Alvarez*, 567 U.S. at 717 (citing *Giboney v. Empire Storage & Ice Co.*, 335 U.S. 490, 498 (1939)). But the OAG's post-hoc rationalization is unpersuasive.[20] In the seminal case that established the "integral to criminal conduct" category, it was undisputed that the speech at issue was intended, as its "sole immediate object," to compel a company to violate a valid Missouri criminal statute. *See Giboney*, 335 U.S. at 498. Like other categories of speech excluded from First Amendment protections, the "criminal conduct" category has been narrowly construed. "To qualify as speech integral to criminal conduct, the speech must be integral to conduct that constitutes another offense that does not involve protected speech, such as antitrust conspiracy, [*Giboney*, *supra*]…, extortion, …or in-person harassment." *United States v. Sryniawski*, 48 F.4th 583, 588 (8th Cir. 2022) (additional citations omitted).

Here, Hicks' transmission of the email did not itself violate § 9.03(D) and Defendants have presented no evidence that Hicks' sole intention was to induce Zurmehly to violate § 9.03(D). To the contrary, Hicks insists that his emails sought information for a dual purpose that included matters of public concern. And to state the obvious, Zurmehly had no obligation to respond. *See also Buchanan v. Crisler*, 922 N.W.2d 886, 900, 323 Mich. App. 163, 188 (Mich. App. 2018) (discussing limitations on speech "integral to criminal conduct" exception, holding that "cyberstalking laws may not be used to restrict speech that relates to a public figure or matters of public concern").

---

[20]The OAG's September 14 letter gives no hint of intended enforcement of § 2917.21(A)(5) based on a desire to prevent Hicks from forcing Zurmehly to use "public funds" for "political purposes," but more broadly suggests that Hicks will be prosecuted for sending *any* emails (partisan or not) deemed by Zurmehly to relate to a "non-government" purposes.

### 2. Plaintiff's Facial Challenges

In addition to his "as applied" challenge, Plaintiff argues on summary judgment that this Court should declare §2919.21(A)(5) to be unconstitutional on its face because it is overbroad, it is vague, and it amounts to a prior restraint on free speech. Plaintiff's facial challenges attack the future enforceability of the statute not against all persons in all situations.

> A facial challenge to a law's constitutionality is an effort "to invalidate the law in each of its applications, to take the law off the books completely." *Connection Distrib. Co. v. Holder,* 557 F.3d 321, 335 (6th Cir.2009) (en banc); *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("a 'facial' challenge ... means a claim that the law is 'invalid *in toto*— and therefore incapable of any valid application.'" (quoting *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974))). In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge "is not an attempt to invalidate the law in a discrete setting but an effort 'to leave nothing standing[.]' " *Connection Distributing Co.,* 557 F.3d at 335 (en banc) (quoting *Warshak v. United States,* 532 F.3d 521, 528 (6th Cir.2008) (en banc)). Sustaining a facial attack to the constitutionality of a state law, as the district court did, is momentous and consequential. It is an "exceptional remedy." *Carey v. Wolnitzek,* 614 F.3d 189, 201 (6th Cir.2010).

*Speet v. Schuette*, 726 F.3d 867, 871-872 (6th Cir. 2013). In opposition to Plaintiff's facial challenges, Defendants reiterate their argument that the "Ohio courts have repeatedly held" that the statute "is neither overbroad nor void for vagueness." (Doc. 41, PageID 570).

A federal court is "bound by a state court's construction of a state statute," such as when a state supreme court interprets or defines specific terms or phrases. *Wisconsin v. Mitchell*, 113 S.Ct. 2194, 2198, 508 U.S. 476, 483 (1993). But to date, the Ohio Supreme Court has never defined specific terms or considered the constitutionality of §

2917.21(A)(5). And as previously discussed, the handful of lower state court decisions that have considered constitutional challenges have rejected them almost exclusively based on *Rowan,* a case that upheld the government's right to restrict commercial speech mailed to an individual's home. Therefore, the undersigned rejects the Defendants' invitation to blindly follow nonbinding Ohio decisions pronouncing the statute to be facially constitutional.

### a.  The Statute is not Overbroad

To assess Hicks' overbreadth challenge, the Court must discern what the statute actually prohibits, and what it does not. *See Speet*, 726 F.3d at 873. On its face, the statute states that

> (A)    No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:
>
> . . .
>
> > (5) Knowingly makes the telecommunication to the recipient of the telecommunication, to another person at the premises to which the telecommunication is made, or to those premises, and the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any persons at those premises…

Ohio Rev. Code § 2917.21. By its express terms, the statute is violated so long as the State can establish that the defendant knowingly made a telecommunication to the recipient, and that the recipient previously told the defendant not to do so.

The statute contains two exemptions from prosecution for certain members of the press and for some debt collectors. Specifically, the statute exempts telecommunications by "a person who, while employed or contracted by a newspaper, magazine, press association, news agency, news wire service, cable channel or cable operator, or radio

or television station, is gathering, processing, transmitting, compiling, editing, or disseminating information for the general public within the scope of the person's employment in that capacity or the person's contractual authority in that capacity." §2917.21(F). The statute also immunizes a person who makes "a telecommunication to a debtor that is in compliance with the 'Fair Debt Collection Practices Act.'" § 2917.21(H). *But see State v. Pillar*, 2012-Ohio-3926, ¶ 18, 2012 WL 3679569, at *3 (Ohio App. 5 Dist., Aug. 24, 2012) (holding that the law could be enforced against creditor whose efforts to collect a commercial debt was not covered by the FDCPA).

Hicks has the burden to prove overbreadth by showing that the statute prohibits "'a substantial amount of protected speech both in an absolute sense and relative to [the statute's] plainly legitimate sweep[.]'" *Speet*, 726 F.3d at 872 (quoting *Carey v. Wolnitzek*, 614 F.3d 189, 208 (6th Cir.2010) (additional citation omitted)); *see also Americans for Prosperity Foundation v. Bonta*, 141 S.Ct. 2373, 2387, 594 U.S. 595, 615 (2021). "If the law does not reach a substantial amount of constitutionally protected conduct, 'then the overbreadth challenge must fail.'" *Speet*, 726 F.3d at 873 (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186 (1982)).

Attempting to carry that burden, Hicks argues that the statute is overbroad because it potentially criminalizes both political speech and petitions for redress.[21] He argues that on its face, the statute permits prosecution of a constituent's free speech or petitions directed to an elected official's governmental office or government email address, whether

---

[21]In his complaint, he includes other allegations of overbreadth, such as the failure of the statute to contain any time limit, allowing an individual's ban on such speech to be enforced in perpetuity. (*See, e.g.*, Doc. 1, ¶52(A),(D), (H), (I)). Because Plaintiff does not develop these additional arguments in his memoranda, and because there is no evidence that the long-standing statute has ever been so applied, the undersigned does not consider them as advancing the argument that the statute substantially burdens protected speech.

transmitted by telephone, email, text, or through any other form of "telecommunication," so long as that official has previously directed the constituent not to further communicate. The undersigned agrees that, *hypothetically*, the scope of §2917.21(A)(5) does extend to those highly revered categories of protected speech. In addition, the undersigned has concluded that the OAG cannot constitutionally apply § 2917.21(A)(5) to Hicks' emails in this case based on their content, regardless of whether the emails are considered to be private speech, political speech, or petitions.

And yet, finding that the statute is unconstitutional as applied to Hicks, or that some portion of protected speech *might* be proscribed, does not compel this Court to find that Plaintiff has shown a "substantial" amount of protected speech is proscribed. *See U.S. v. Popa*, 187 F.3d at 678 (vacating the defendant's conviction because the statute was unconstitutional as applied but expressly declining to consider facial challenge); *Sryniawski*, 48 F.4th 583 (agreeing with defendant's "as applied" challenge but not striking down statute); *see also Hustler*, *supra* (acknowledging that statute was facially constitutional despite successful "as applied" challenge). "The concept of 'substantial overbreadth[]' … has some elusive qualities." *Connection Distrib. Co.*, 557 F.3d at 340.

> Substantial overbreadth involves not just an inquiry into the legitimate and illegitimate sweep of a statute; it also involves an inquiry into the "absolute" nature of a law's suppression of speech. Together, these questions require as much in the way of judgment as they do a comparison between the constitutional and unconstitutional applications of a law. Ultimately, the critical question is this: Under what circumstances is it appropriate to invalidate a law in all of its applications when its invalidity can be shown (or assumed) in just some of its applications?

*Id.*

In *Connection Distrib, Co*., the Sixth Circuit declined to invalidate the challenged statute in part because of the weakness of the plaintiffs' showing. The court noted that in "[o]ver twenty years and numerous administrations," the statute had never been enforced to criminalize even one area of protected speech, notwithstanding the argument that it hypothetically could be so applied. *Id*. Like the statute in *Connection Distrib. Co*., § 2917.21(A)(5) has been enforced by the State of Ohio, in various iterations, for decades. But never has the State actually applied it in the overbroad manner that Plaintiff suggests - to a person communicating political speech or to someone sending some form of telecommunication to their elected official's government email, phone number or address. *See generally*, *Plunderbund*, 753 Fed. Appx.at 369 (noting the lack of any prior application of § 2917.21(B)(2) to political speech and the State's explicit disavowal that it would prosecute such speech under that provision).

The closest the State has ever come is the threat of enforcement against Hicks in this case. But even then, the State did not threaten to proscribe *all* of Hicks' political speech and petitions to Zurmehly, but only a subset of emails deemed unrelated to "Clermont County Treasurer" business. On the record before it, this Court is disinclined to permit Hicks to "leverag[e]" that single unconstitutional application "into a ruling invalidating the law in all of its applications.'" *Speet*, 726 F.3d at 878 (quoting *Connection Distrib. Co.,* 557 F.3d at 340).

In contrast to the "as applied" challenge, this Court also finds relevant that both Ohio courts and the Sixth Circuit have uniformly rejected all prior constitutional challenges, finding the statute constitutionally permissible under *Rowan*. On that note,

the Sixth Circuit's analysis in *Hagedorn* is instructive.[22] As discussed, *Hagedorn* involved a content-neutral application of the statute to protect the privacy interests in an elected official's "home" email address, as opposed to his government email. Rejecting a constitutional challenge, the court stressed that enforcement served the state's "legitimate interest in protecting citizens from unwanted intrusions into the privacy of their *homes*." *Id*., 715 Fed. Appx. at 507 (emphasis added, additional citation omitted). Thus, *Hagedorn* understood that the statute's plainly legitimate sweep under Ohio law was entirely consistent with the constitutional limitations set forth in *Rowan*.[23] Even though the constitutional findings of *Hagedorn* and of Ohio's lower courts are not binding, together they represent Ohio's significant historical record of entirely constitutional application.[24] So, a bit like in *Connection Distrib. Co*., this Court is faced with comparing that historical record to Hicks' suggestion that the statute could encompass a "worst-case scenario that, to our knowledge, has never occurred, that may never come to pass and that has not been shown to involve a materially significant number of people." *Id.* Exercising the judgment that is required on the record presented, the undersigned finds insufficient evidence to prove Hicks' contention that § 2917.21(A)(5) is overbroad.

---

[22]The OAG refers to *Hagedorn*'s agreement with Ohio courts' rejection of prior constitutional challenges, including an overbreadth challenge, as "controlling." (Doc. 58, PageID 833). Although unpublished Sixth Circuit case law can be persuasive, only published Sixth Circuit authority is controlling.

[23]The OAG cites the same purpose. But in briefing, Defendants suggest additional purposes relating to government efficiency (restricting the use of government emails to "government business") and to prevent officials from using public funds to respond to emails that relate to partisan or private concerns. As discussed i*nfra*, the State's use of § 2917.21(A)(5) to accomplish such objectives is questionable at best, since the statute on its face is content-neutral and clearly not drafted with that purpose in mind.

[24]Not every state shares Ohio's interpretation. *See State v. Vaughn*, 366 S.W.3d 513, 519 (Mo. 2012) (striking down similar provision of statute as unconstitutional based in part on chilling effect on political speech as well as everyday communications, rejecting broad expansion of *Rowan*'s recognized privacy interests beyond the home and specific areas such as medical facilities).

### b.  The Statute is not Vague

The undersigned also rejects Hicks' contention that the statute is overly vague, finding the reasoning of the Ohio lower courts and of *Hagedorn* to be persuasive on this issue. The statute is content-neutral on its face, and has been consistently applied in that manner, in order to bar individuals from committing a type of "trespass" into the uniquely private interests inherent in an individual's home. *See City of Delaware v. Boggs*, 2018-Ohio-4677, ¶ 14, 2018 WL 6075645, at *2 (Ohio App. 5 Dist. 2018); *State v. Mollenkopf*, 456 N.E.2d 1269, 1270, 8 Ohio App.3d 210, 210–11 (Ohio App. 11 Dist. 1982) (holding that statute only requires proof that defendant called the complainant's residence after having been told not to call there).

### c.  The Court Declines to Review Hicks' Prior Restraint Claim

Hicks alleged in his complaint that the statute was facially overbroad and vague, and unconstitutional as applied. In his Motion for Summary Judgment, however, he adds a new claim that §2917.21(A)(5) has the ability to act as a prior restraint on constitutionally-protected expression. Because Plaintiff did not assert this claim in his Complaint, the undersigned declines to address it. *See Guiffre v. Local Lodge No. 1124*, No. 90–3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (unpublished); *Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005).

### V.  Conclusion and Recommendations

Accordingly, **IT IS RECOMMENDED**:

1.  That Hicks' motion for summary judgment (Doc. 57) should be **GRANTED IN PART but should be otherwise DENIED, as follows:**

    a.  Because Ohio Rev. Code § 2917.21(A)(5) is unconstitutional as applied to Hicks on the record presented, Hicks is entitled to declaratory and injunctive relief against the OAG's threatened enforcement;

    b.  Specifically, the OAG should be enjoined from enforcing § 2917.21(A)(5) in a content-specific fashion to Hicks' use of Zurmehly's Government email for topics that she declares to be outside the scope of her elected duties;

2. The Clermont County Prosecutor's motion for summary judgment (Doc. 42) should be **GRANTED** based on Hicks' failure to demonstrate standing against that Defendant;

3. The motion of the Ohio Attorney General for summary judgment (Doc. 41) should be **DENIED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CHRISTOPHER HICKS,

        Plaintiff,

    v.

D. VINCENT FARIS, et al.,

        Defendants.

Case No. 1:20-cv-680

McFarland, J.
Bowman, M.J.

**NOTICE**

Under Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).